THE IMMACULATE CONCEPTION CHURCH, Ithaca, Appellant, *v.* CHARLES E. SHEFFER, Respondent.

88 · 335
156a 670

88h     335
78 AD²327

*Right of way — ambiguous language — the circumstances of use and situation of the parties may be shown — proof of contradictory statements of a witness made out of court.*

Where the language used in the grant of a right of way is ambiguous, evidence may be received as to the circumstances attending the actual use of such right of way and the situation of the parties, with a view of arriving at their true intent in using the language to be construed.

A party is entitled to show inconsistent statements of an adverse witness made out of court which tend to contradict the evidence of the witness given on the trial.

APPEAL by the plaintiff, The Immaculate Conception Church, Ithaca, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Tompkins on the 30th day of August, 1893, upon the report of a referee, with notice of an intention to bring up for review upon such appeal the report of said referee.

*Tompkins & Cobb,* for the appellant.

*J. A. Elston,* for the respondent.

HARDIN, P. J.:

Plaintiff's complaint alleges ownership of certain lands therein

particularly described, situate in the city of Ithaca in block 107, and that on the 26th of April, 1892, the defendant wrongfully entered upon the plaintiff's land described, " tearing down the gates and taking down the fence standing upon said land of the plaintiff and removing the same and injuring said premises, and thereby said defendant has deprived the plaintiff of the use and occupation of said land above described, and prevented it from enjoying the same as it otherwise would have done to the plaintiff's damage of one hundred dollars." The answer contains several denials, and denies that the plaintiff is entitled " to a strip of land twelve feet wide taken off from the north side of lot 182, the said strip of land being a portion of the premises described in the complaint in this action." The answer of the defendant also alleges " that he is entitled to use as a lane or alleyway, and for alley purposes, the lane twelve feet wide off from the North side of Lot 182, Block 107, on Plain street, in said City of Ithaca, said alleyway being a part and parcel of the land described in the complaint in this action." The answer also alleges " that said alley was reserved for a right of way and alley purposes by Anson Braman, the former owner of said premises, for the use of Lots 181 and 182, and also for the use of himself and his assigns." And the defendant alleges that he is the owner of lot 181 " and has the right to use said alley or right of way off from the North side of Lot 182." The evidence reveals that both parties claim title to their respective lands through Anson Braman, who, in 1847, purchased lots 182, 183 and 184, situated at the corner of Plain and Buffalo streets, in the said city. January 1, 1849, Anson Braman conveyed to Theron Seymour the corner lot of 66 feet on Buffalo street by 198 feet on Plain street, which is known in the evidence as the Wilgus or Doxstader lot. In the conveyance so made there was a reservation for the use of the balance of Braman's lots of a right of way twelve feet wide across the north end of the land conveyed. The conveyance, after describing the premises as parts of lots Nos. 182, 183 and 184, contained the following language : " Reserving, however, to the said parties of the first part, their heirs and assigns, for the use of the balance of said lots, a right of way of an alley twelve feet wide on the North end of the premises hereby conveyed." Subsequent, to the execution of that deed, and on May 8, 1850, Braman pur-

chased of Williams lot 181, which was sixty feet wide on Plain street and immediately joining his former ownership on the north. Subsequently, and on the 3d of September, 1868, Braman conveyed to Addison M. O'Daniel the west half of lot 186, being 66 feet by 132 feet, and in that conveyance were the following words: "Together with the right of way over the lane taken off from the North side of Lot 182, being a part of the same premises conveyed to said Anson Braman by deed from J. B. Williams." The principal controversy at the trial was over the length of the lane mentioned in the language just quoted, the contention of the plaintiff being that the language vested the right to the grantee of a use of a right of way a distance of sixty-six feet from Plain street; whereas, the contention of the defendant is that the lane was to be extended 132 feet from Plain street so as to accommodate the entire length of the premises conveyed. The defendant has succeeded to all the right, title and interest embraced in the deed last mentioned, inasmuch as O'Daniel conveyed to Mead and Mead conveyed to Mary O'Daniel and she conveyed to the defendant. Subsequently, and in January, 1869, Anson Braman, having published his last will and testament, died and the devisee under his will conveyed the remaining portions owned by him to one Phillip Lynch, who conveyed to the plaintiff. Abundant evidence was given on the trial to indicate that at the time of the execution of the deed to O'Daniel, and for some time prior thereto, the lane, which commenced at Plain street and continued a distance of 132 feet east over the north side of lot 182, had been used its entire length and that a traveled way appeared as the result of considerable use. Prior to the execution of that conveyance Braman had carried on a nursery business on lots 181, 182, 183 and 184 for a number of years, and he resided on the east half of lots 183 and 184, and his barn was on lot 182 and faced the lane. There were also several buildings located along and adjacent to the lane, and Braman had been accustomed to use his barn and nursery grounds by passing over the lane from Plain street, that being the convenient means of egress to his premises from Plain street; and there had been in use a portion of the time a gate at the east end of the barn, at a point 132 feet east of Plain street. There was some evidence tending to

show a use of the lane along the north side of lot 182 since about
the year 1853 and its frequent use by Braman. It is made quite
apparent by the evidence that when the defendant purchased the
west half of lot 181 he had become familiar with the lane and its
use prior thereto, and he had walked over the lane from Plain
street, a distance of 132 feet, for a period of some twenty years
that he had been acquainted with it, and that prior to his purchase
he had walked over it, and that he saw that it was open from Plain
street to the east end of the lot which he acquired, to wit, for a dis-
tance of 132 feet. In April, 1892, the defendant commenced
building a barn on the back end of his lot and using the lane for
the purposes of carrying the building material through to the site
chosen for the location of the barn. Before he had completed his
building, and while he was still working upon it, the plaintiff,
through its officers and agents, took means to close the lane by plac-
ing a gate across it and locking the gate so as to exclude the defend-
ant from the use of the lane. After the gate had remained closed
for some two or three days the defendant opened it and resumed
the use of the lane for the convenience of his building. During
the trial the plaintiff conceded "that no part of the fence on the
south side of the O'Daniel lot was taken down by the defendant,
except so much thereof as was in front of and necessary to make
convenient access to the barn." The will of Braman, which bears
date the 21st of June, 1866, devised to his wife that portion of the
lands then owned by him, and after a minute description of them
occur the words, viz. : "Including a right of way from the above-
described premises to said Plain street." After his will was pro-
bated his widow and heirs at law joined in an instrument executed
on the 26th of April, 1876, conveying to Phillip F. Lynch the
lands described in the complaint, and at the close of the description
occur these words, "together with the use of a right of way from the
above-described premises to said Plain street." Lynch, on the 16th
of December, 1878, conveyed to the plaintiff the premises described
in the complaint, and that conveyance, after the words of descrip-
tion, contained the following words : "Together with the use of a
right of way from the above-described premises to said Plain street
in the said village of Ithaca, being the same premises owned and
occupied by Anson Braman, now deceased, in his lifetime, and

described in the will of said Braman." From the language found in the conveyance just alluded to, it is apparent that it was the intention that the right of way should be for the convenience of the properties, to wit, the property owned by the defendant and the property owned by the plaintiff. In order to subserve fully the purposes of the right of way, and especially to enable the defendant to have full benefit thereof, it is quite reasonable to suppose that the intention of the parties was that the right of way mentioned in the conveyance by Braman to O'Daniel should be of the entire length of the premises thereby conveyed to him. A careful perusal of the oral testimony, although it is very conflicting, and would, perhaps, have warranted the referee in reaching a different conclusion from the one he states in his report, seems to indicate that the language found in the conveyance to O'Daniel was used for the intent and with the purpose of giving him a continuous right of way from Plain street to the rear of his premises, to wit, for a distance of 132 feet. The referee received evidence from both parties as to the circumstances attending the practical and actual occupation of the land or right of way, and, we think, in doing so he kept within the rule of law which permits such evidence to be received where there is ambiguity or uncertainty as to the intention of the parties in using the language to be construed.

In *Herman* v. *Roberts* (119 N. Y. 37) it was held by RUGER, Ch. J., viz.: "In considering the extent of the rights of the respective parties in the grant of a right of way, it is not proper to refer to the parol negotiations which preceded its execution or the colloquium accompanying it (*Bayard* v. *Malcolm*, 1 Johns. 467; *Renard* v. *Sampson*, 12 N. Y. 561; *Long* v. *N. Y. C. R. R. Co.*, 50 id. 76); but we are to regard the language of the grant, and, when that is uncertain or ambiguous, the circumstances surrounding it, and the situation of the parties, with a view of arriving at the true intent of the parties." We find no occasion to disturb the rulings of the referee or his report, because he received the facts and circumstances as to the situation of the property at the time the language was used by the parties in creating the easement. As we have before said, there was a great conflict in the evidence, and, after a careful review of it, and awarding to the referee's report such

influence as we think it should receive, we accept his conclusions upon the facts, and we are of the opinion that his conclusions upon the facts accord with the weight of the evidence. (*Barnard* v. *Gantz*, 140 N. Y. 249.) Nor do we find any occasion to disturb the conclusions of law stated by the referee in his report, which were as follows, viz. : " 1. That by the deed of September 3d, 1868, Anson Braman conveyed to Addison M. O'Daniel with the western portion of lot 181 an easement appurtenant thereto for the right of way over a strip of land twelve feet in width, taken off from the north side of lot 182 and extending eastward from the line of the Seymour property, which was sixty-six feet east of Plain street, to a line one hundred and thirty-two feet east from Plain street, and at the same time granted to said O'Daniel and his assigns the right of way, so far as it was in the power of the owner of the premises now held by the plaintiff to do, over that portion of said lane which extends from Plain street sixty-six feet eastward.

" 2. That the defendant, as the successor to the title and interests so conveyed to said O'Daniel, did, on the 26th day of April, 1892, have the right as against the plaintiff to use the lane throughout its entire length as a means of ingress and egress to his premises ; the right to open by force, if necessary, the gate across the lane at the west line of the plaintiff's property, and also had the right to remove so much of the fence in front of his barn as was necessary to make convenient access thereto from the lane."

(2) Appellant complains of a ruling made by the referee. When the witness Catherine M. King was being examined the following question was propounded to her : " Q. Did you have a conversation with Mrs. Braman, now Mrs. Starr, before the premises were sold to Lynch, and after Mr. Braman's death, in which a lane on the north side of the Braman barn was referred to ? " This question was objected to by the plaintiff as leading, incompetent and improper ; the objections were overruled and an exception was taken, and the answer of the witness was " I did," and then the question was propounded, " State what it was ? " Thereupon plaintiff's counsel stated that as Mrs. Starr was, at the time of making the statement, only life tenant, and had no right to convey, her evidence could not be received. Plaintiff had theretofore placed Mrs. Starr upon the stand and examined her at length with a view of giving facts

and circumstances tending to show that no use of the lane was made beyond a distance of sixty-six feet from Plain street. In the course of her cross-examination she was asked especially as to having had a conversation with Mrs. King, and especially as to whether she had stated that " Whoever owned the O'Daniel lot had a right to use this barnyard   *   *   *   for a driveway," and she had answered that she did not state that. Some other questions of a similar character were put to her which led to her denials. The referee was, therefore, warranted in delivering his ruling, which he did in the following language : " The witness may state what Mrs. Starr said, if anything, with regard to the existence of a lane at that point at that time, confining herself to that simple fact, and also to the conversation to which Mrs. Starr's attention was called." Immediately after this intimation of the referee the counsel for the defendant stated, viz. : " This question is asked witness for the purpose of contradicting Mrs. Starr." The plaintiff took an exception to the ruling and the witness answered, viz. : " She proposed to sell me the land between my lot and the O'Daniel line for a certain price. I said if I paid that price for it I should want to have the land clear through to the O'Daniel line. She said that she could not give that because O'Daniel had a right of way across there. I think I have stated all that she said." We think no error was committed by the referee under the circumstances apparent to him when he made the ruling. (*Sloan* v. *N. Y. C. R. R. Co.*, 45 N. Y. 125 ; *People* v. *Brockett*, 85 Hun, 138 ; S. C., 65 N. Y. St. Repr. 667.)

(3) Many other rulings were made during the progress of the trial ; in some instances, after the particular question that was propounded and the objections thereto sustained, it appears the evidence was subsequently received which the question apparently called for. We observe that the referee allowed considerable latitude to either side in developing the evidence that related to the situation of the premises and the acts of the parties in respect thereto. We have observed no ruling that presents prejudicial error calling for us to interfere with the result reached by the referee. Numerous exceptions were taken to the referee's declining to make some more minute findings of fact in response to requests that were made. In several instances the requests related to matters involved in conflicting evidence, and the referee in declining committed no error which should

lead us to interfere with his refusal.   And in some instances the requests were for facts which were immaterial in the light of the principal findings made by the referee upon the leading features of the case.

(4) It is contended in behalf of the appellant that as some evidence cropped out during the trial which indicated that " the defendant's barn being two feet over on plaintiff's land," it is, therefore, apparent that the defendant " is not entitled to cover a portion of it with his barn," and it is insisted in behalf of the plaintiff that by so doing he " trespassed upon plaintiff's rights and, therefore, plaintiff is entitled to recover."   If it be assumed that the plaintiff is right in the construction of the evidence to the effect that the barn is over the line to some extent, still we think the plaintiff is not entitled to have us disturb the report of the referee.   By turning to the complaint, from which we have already quoted, it will be seen that the gravamen of this action is for an entry on the 26th day of April, 1892, and that it is alleged the defendant tore down " the gates " and took down " the fence standing upon said land of the plaintiff," and removed the same and injured said premises, and no other wrongs or trespasses are mentioned in the complaint, and we find no language that would bear us out in construing the complaint as applicable to the circumstance that the barn was, as claimed by the plaintiff, over the line two feet, and, therefore, a trespass.   Nor do we find the question of the plaintiff's right to recover by reason of the location of the barn made a ground for relief during the progress of the trial.

The foregoing views lead to the conclusion that the report of the referee should be sustained.

The judgment should be affirmed, with costs.

MARTIN and MERWIN, JJ., concurred.

Judgment affirmed, with costs.