## JOSEPH ANDREWS *v.* CONNECTICUT LIGHT AND POWER COMPANY

SUPERIOR COURT  NEW HAVEN COUNTY  FILE NO. 91268
AT NEW HAVEN

Memorandum filed July 16, 1962

*Alexander Winnick* and *Edward B. Winnick,* of New Haven, for the plaintiff.

*Carmody & Torrance,* of Waterbury, for the defendant.

FitzGerald, J. The within action is one in which the plaintiff is seeking a declaratory judgment, as appears in the prayers for relief following the complaint, which comprises eight paragraphs. In its answer, the defendant admits the allegations recited in paragraphs 1, 2, 7 and 8 of the complaint and leaves the plaintiff to his proof regarding the subject of the remaining paragraphs thereof. It would appear that the allegations recited in paragraphs 4 and 5 of the complaint are not contested. Accordingly, it is the allegations recited in paragraphs 3 and 6 of the complaint which are in issue and are to be considered in relation to the questions growing out of the prayers for a declaratory judgment.

The following facts, in addition to those admitted by the defendant in its answer (as noted, the subject of paragraphs 4 and 5 of the complaint, although denied by the answer, do not appear to be contested), are either undisputed or find support in the evidence as a whole: The large tract of land acquired by the defendant from Julia Keefe by deed dated July 11, 1918, and duly recorded in the land records of the town of Oxford on July 22, 1918, was for the purpose of enabling the defendant as grantee to further its project in connection with the completion of its Stevenson dam and hydroelectric installation then under construction across the Housatonic River. The dam was completed in the late summer of 1918, and Lake Zoar, a designed result thereof, was formed upon part if not most of the land conveyed to the defendant by Mrs. Keefe. This lake occupies an area of fourteen miles in length and is between one-quarter and one-half of a mile in width.

It is extensively used for boating and allied pursuits. As a result of the formation of this lake, that portion of the land reserved by Mrs. Keefe in the nature of an easement "to [herself, her] heirs and assigns forever" abutted upon the shore of the lake for some few hundred feet after its formation.

In 1920 or 1921, Mrs. Keefe erected a building on the area of land reserved by her. This building had rooms on the first floor, one of which was quite sizable, and rooms on the second floor. The Keefe family at this time occupied the second floor for living purposes. An open veranda extended off of the first floor and from it a stairway led down to the bank of the lake. A boat landing for the docking of boats was constructed sometime in the early 1920's and was used by persons other than members of the Keefe family for the docking of their boats.

There is some suggestion in the evidence that for a time during the 1920's the first floor of the building erected by Mrs. Keefe was used as a "speakeasy," that is to say, for the illegal sale of alcoholic liquor to members of the public. The era at this time embraced the prohibition days brought about by the National Prohibition Act. Following this illegal activity, which apparently was not conducted for any long period of time, soft drinks and sandwiches could be purchased in the main room of the building by members of the public, and on summer Saturday evenings dancing took place on the veranda.

In the early 1930's, Mrs. Keefe died, and her daughter, Susie Keefe Kelly, and the latter's husband, Joe, constructed a beer hall or lounge on the lower level of the building and conducted a restaurant business therein until the late 1930's. At this time, the sale of beer and other alcoholic liquors had once again become legal. In 1940, Henry J. Fortier and Dominic Saldamaro purchased from the

estate of Mrs. Kelly, following her death, the subject of the initial reservation. With the exception of the summer of 1944 or 1945, the new owners did not operate a restaurant business. The single summer excepted concerned only the sale of soft drinks and sandwiches by the then owners.

By deed dated July 26, 1947, the plaintiff acquired "the boathouse privileges as reserved in a deed from Julia Keefe to the Connecticut Light and Power Company dated July 11, 1918," and in a separate deed a parcel of land not conveyed by Mrs. Keefe to the defendant in 1918. The latter parcel of land is directly across a new highway and opposite the land to which the reservation relates. Thereafter, the plaintiff commenced to make extensive alterations and renovations to the building constructed by Mrs. Keefe in 1920 or 1921. These activities have been going on for the past ten years and have been approved by the Oxford zoning commission. It is the claim of the plaintiff, controverted by the defendant, that he has the right to operate, maintain and conduct a restaurant business upon the premises in question, and the right to sell food, beverages and alcoholic liquors to persons using the boat landing, and to the public in general, and to repair, reconstruct and renovate the existing building and boat landing, erected by Mrs. Keefe subsequent to July 11, 1918, to enable him to carry out uses incidental thereto.

Counsel are in agreement that the controlling paragraph in the deed of Mrs. Keefe to the defendant of July 11, 1918, determinative of the rights and limitations which subsequently passed to the plaintiff by conveyance, is the fourth paragraph. It reads: "The said grantor reserves to herself her heirs and assigns forever an easement, privilege and right to locate and maintain a boat landing with

all structures incident and convenient thereto, on the southerly side of the new highway at the westerly end of the premises hereinbefore described and extending not more than 200 feet easterly from Wood Brook, so-called, provided, that the grantee shall not be liable for any accidents or damages on account of said boat landing, with all structures incident and convenient thereto and of the use thereof either by the said grantor or any other person or persons under the said grantor's permission, and that the said grantor shall maintain said boat landing with all structures incident and convenient thereto and use and permit it or them to be used in such a manner that no properties of the said grantee shall be damaged or jeopardized thereby."

So also counsel are in agreement that what Mrs. Keefe in effect did in her deed to the defendant of July 11, 1918, was to reserve to herself, her heirs and assigns, an easement in the land conveyed. It is the extent and scope of that easement which is in controversy. "The law . . . looks beyond the form of expression to the substance of the thing expressed, and gives effect to the intent of the parties thus discovered." *Farmington* v. *Riley,* 88 Conn. 51, 56. "The character and extent of the easement are to be determined from the language of the deed, and if that is ambiguous, the situation of the property and the surrounding circumstances may be reverted to, in order to ascertain the intention of the parties, and to give it effect." *Lynch* v. *White,* 85 Conn. 545, 550, and cases cited; see *Miller* v. *State,* 121 Conn. 43, 48. "There should be considered, when necessary and proper, the force of the language used, the ordinary meaning of words, the meaning of specific words, the context, the recitals, the subject matter, the object, purpose, and nature of the reservation or exception and the attendant facts and surrounding circumstances before the parties at the time of

making the deed." 26 C.J.S. 1014, § 140 (5). To the foregoing general rules of construction, there is another worthy of consideration. It is to the effect that a reservation should be construed so as to confer a practical right, and will include by implication that which is necessary to the reasonable enjoyment of the thing reserved, so long as it is not contrary to the ascertained intent of the parties. See 26 C.J.S. 1025, § 140 (8).

On July 11, 1918, the date of the Keefe deed to the defendant, the sale of alcoholic beverages was legal. However, there had been pending before the Congress of the United States since December 18, 1917, the subject of the eighteenth amendment to the United States constitution, which became effective January 16, 1920. The twenty-first amendment to the constitution repealed the eighteenth amendment and was ratified by Connecticut on July 11, 1933. The court feels justified in taking judicial notice of the fact that much of the background of the eighteenth amendment was connected with the War Act of November 21, 1918 (see Webster, New International Dictionary [2d Ed.], "Volstead Act"), being the outgrowth of World War I; and it was then the prevailing view in this country that the eighteenth amendment would ultimately be repealed, as it was. It is to be assumed that on July 11, 1918, both Mrs. Keefe and the officials of the corporate defendant had in mind that national prohibition was in the offing and also that its existence in all probability would not be of long duration, which was the situation.

It now remains to apply the rules of interpretation, the salient ones of which have been stated supra in analyzing the fourth paragraph of the Keefe deed of July 11, 1918. The tract of land to which the reserved easement was to abut was to be

located for some few hundred feet along a portion of the north shore of a lake not then in existence but to be created in futuro, and which was thereafter created. The rights of locating and maintaining a boat landing and all structures incident and convenient thereto were reserved by Mrs. Keefe for herself, her heirs and assigns. It was expressly stipulated therein that the defendant was not to be liable for any accidents or damages resulting from the use of the boat landing and of the structures, whether such use was made by Mrs. Keefe or by any other person or persons, subject to the proviso that such uses should not damage or jeopardize the properties of the defendant.

The language employed in the quoted paragraph of the deed of July 11, 1918, is deemed sufficient in character and scope to disclose the intention of the parties regarding the uses to be made of the easement reserved. Clearly, it was intended that the boat landing to be constructed and used later was not to be confined to the private use of the Keefe family and successors in title. And the same applies to the location and maintenance of future structures incidental and convenient thereto. If it were otherwise, why the inclusion of exoneration of the defendant for accidents and damage claims arising out of the use of the boat landing and such structures when used by Mrs. Keefe or by other persons?

The context of the entire paragraph, including the nature of the easement reserved and the existing and surrounding circumstances of which the parties were cognizant, and the uses actually made by Mrs. Keefe and other successors in title before the conveyance to the plaintiff, and the defendant's acquiescence in such uses until recent date, leave no question of the ascertained intention of Mrs. Keefe and of the defendant as of July 11, 1918. Obviously, it

was that a boat landing and structures incidental and convenient thereto could be located, maintained and used by the owner of the easement for legitimate business purposes by members of the public. In the light of the evidence as a whole, such uses cannot be said to be contrary to the ascertained intent of the parties but pursuant thereto. At the trial, the defendant did not offer any evidence that such uses ever did, or would, damage or jeopardize its own properties. It naturally follows, however, that such uses contemplated by the plaintiff cannot be in contravention of federal, state or local law. The defendant does not make the claim in oral argument or in its brief that the uses proposed by the plaintiff would be in violation of any public law.

It can be reasonably assumed, or if necessary implied, that on July 11, 1918, Mrs. Keefe and the officers of the defendant corporation had reason to know that a changing world was in the making. There is evidence before the court that what were known as boat landings in 1918, with structures incidental thereto, in recent years have become marinas providing fuel for docked boats and restaurant services where food, beverages and alcoholic liquors may be had by persons using the boat landings, as well as by members of the public generally. The modern-day marinas are to be found on both salt-water and fresh-water locations. That they are incidental to the uses of a modern-day boat landing and that their facilities are enjoyed by the public generally find ample support in the evidence presented at the trial.

A provision in a deed containing a reservation or other restriction or condition has been held to be the proper subject of an action for a declaratory judgment. 16 Am. Jur. 307, § 32. The defendant does not claim otherwise. "It has also

been stated that a declaratory judgment is not a proceeding to impose equitable terms on disputing parties, but to determine fixed legal rights." 16 Am. Jur. 289, § 15. Perhaps the best statement on this phase is that given by the Supreme Court of Missouri in way of quotation: " 'Relief by declaratory judgment is sui generis, and while not strictly legal or equitable, yet its historical affinity is equitable.' " *Strype* v. *Lewis,* 352 Mo. 1004, 1007.

There is no question that the plaintiff upon payment of a consideration acquired the subject of the easement reserved by Mrs. Keefe in her deed to the defendant of July 11, 1918, and that in so doing he was motivated by the fact that over the preceding years uses were made of the boat landing and of the main house incidental thereto which are not to any material extent different from those contemplated by him. Over the years following July 11, 1918, neither the defendant nor others objected to the uses made of the easement reserved. It would seem that certain rights inuring to the plaintiff became fixed legal rights regardless of how they may be labeled, and that such may be said to have been within the intention of the parties upon the execution of the original deed of July 11, 1918, to which the plaintiff is a bona fide assignee.

Subject to the provisions, restrictions and limitations of any law, federal, state or local, including any ordinances and building regulations of the town of Oxford, and any regulations of the liquor control commission of Connecticut, and of the agency authorized to issue permits for fuel relating to boats, the following is adjudged and decreed: It is adjudged and decreed as a declaratory judgment that pursuant to the fourth paragraph of the deed of Julia Keefe to the defendant, dated July 11, 1918, and recorded in volume 34 on page 603 of

the land records of the town of Oxford, the plaintiff (1) has the right to operate, maintain and conduct a restaurant business upon the premises, and to sell food, beverages and alcoholic liquors to persons using the boat landing appurtenant thereto, as well as to members of the public generally; (2) has the right to reconstruct and renovate any structures presently in existence upon said premises, including the boat landing, and (3) has the right to instal a tank for fuel to supply any boats using said boat landing. The last granted item is a practical incident of the latter part of (2), growing out of prayers for relief, No. 3.

Judgment may so enter with taxable costs to the plaintiff as an incident thereof.