Oneida County Mobile Home Sales, Inc., et al., Respondents-Appellants, v Niagara Mohawk Power Corporation, Appellant-Respondent; John J. Auer et al., Respondents.

Fourth Department, July 13, 1978

## APPEARANCES OF COUNSEL

*Basloe, Basloe & Gallagher (Evalyn G. Basloe* of counsel), for appellant-respondent.

*Roberts & Pratt (Stewart Pratt* of counsel), for respondents-appellants.

*Penberthy & Kelly (Frank J. Nebush, Jr.,* of counsel), for Marguerite Auer, respondent.

*Michael P. De Santis* for John J. Auer, respondent.

## OPINION OF THE COURT

CARDAMONE, J. P.

We must decide on this appeal who is to pay the $7,100 cost of relocating power lines in plaintiff's mobile home park so as to eliminate a hazardous condition created by the lines passing over mobile homes.

The parties to this declaratory judgment action are plaintiffs, Oneida County Mobile Home Sales, Inc. and its president Douglas H. Burrows, Sr., who are the present owners of the mobile home park (plaintiffs); defendant, Niagara Mohawk Power Corporation (Niagara Mohawk) which was granted easements in 1958, 1959 and 1965 to build and maintain the telegraph and telephone lines in question on a right of way granted it over the mobile home park by codefendants Marguerite and John J. Auer (Auers) who were former owners of

the mobile home park until they conveyed it to plaintiffs in 1970.

The factual background which gives rise to this litigation commenced in January, 1958 when the Auers granted the first of three identically worded easements to Niagara Mohawk over their premises in the Town of Schuyler, Herkimer County. The latter easements were granted in May, 1958 and July, 1965. They provided:

"One dollar ($1.00) and other valuable considerations, in consideration of which the undersigned, hereinafter called the Grantor, has granted and released and does hereby grant and release to the Companies, their respective successors and assigns, a right of way and easement to build, rebuild, relocate, operate, repair, maintain and, at their pleasure, remove a single line of so many poles, crossarms, wires, transformers, cables, guys, stubs, anchors, brace poles, ways and other appurtenant or supporting apparatus or structures as either of the Companies may now or shall from time to time deem necessary, and to transmit and distribute electricity and to render telephone and telegraph service upon, over, across, through, under and beyond the land, including land within the adjoining highways, which the Grantor owns or in which the Grantor has an interest.

"With the right to trim, cut and remove any trees, limbs, brush or other obstructions on either side of said lines which either of the Companies may deem likely to interfere with the operation thereof.

"This grant and easement shall at all times be deemed to be and shall be a continuing covenant running with the land and shall enure to and be binding upon the successors, heirs and assigns of the Grantor."

These easements were needed in order to provide electrical service to mobile homes and mobile home sites on the Auer premises and, according to the pleadings, various mobile homes were placed on the premises between 1958 and 1970. On January 7, 1970 the Auers conveyed the mobile home premises to plaintiff, Douglas H. Burrows, Sr. The deed contained a clause "[e]xcepting and reserving the rights of the power company in the above-described parcel" and it also contained covenants warranting title and of quiet enjoyment. On June 1, 1970 Burrows conveyed the premises to plaintiff Oneida County Mobile Home Sales, Inc.

On October 22, 1975 Niagara Mohawk informed plaintiffs

that the existence of mobile home sites under the 7,600 volt power lines constituted a hazard to tenants of plaintiff and a violation of the power company's easements. Niagara Mohawk demanded either relocation of all mobile home sites or payment of $7,152, the alleged cost of relocation of the power lines, and threatened termination of electrical service within 90 days in the absence of compliance. Because of the location of roadways and of water and septic service, moving 20 mobile homes appeared to plaintiffs to be virtually impossible. Instead, plaintiffs commenced an article 78 proceeding on May 12, 1976 to prevent termination of electrical service. Special Term in Oneida County enjoined Niagara Mohawk from terminating the electrical service to tenants of plaintiff's mobile home park and ordered Niagara Mohawk to correct the alleged hazardous condition. Plaintiff was ordered to post a bond in the amount of $7,100 and by agreement of the parties the proceeding was converted to a declaratory judgment action seeking a determination as to who is to bear the cost of the relocation of the power lines.

On this appeal Niagara Mohawk relies on the easements granted it which it claims prohibit the placement of mobile homes underneath its lines. Plaintiffs argue that there is no such restrictive language contained in the easements and that were they to be held responsible for the expense of relocating the power lines that the Auers should indemnify them because such would breach the covenant of quiet enjoyment which the Auers conveyed to them. It is the Auers' position that the claim of Niagara Mohawk is barred by several Statutes of Limitation and that at the time when plaintiffs purchased from them the deed was made subject to the easements reserved to Niagara Mohawk.

The litigation has proceeded by agreement between the parties as a declaratory judgment action in which each seeks judgment as a matter of law. Under these circumstances, and because the conceded facts permit us to, we proceed to determine this declaratory judgment action on the merits.

■ We hold that plaintiffs' claims and Niagara Mohawk's cross claims against the Auers were properly dismissed. Plaintiffs' claims against the Auers for breach of the covenants of title and quiet enjoyment are without merit. Burrows purchased the mobile home premises in 1970 and the grant contained in the deed specifically excepted and reserved the rights of the power company in the parcel conveyed. Plaintiffs

are therefore subject to Niagara Mohawk's rights in the conveyed parcel *(Huyck v Andrews,* 113 NY 81, 90; 1A Warren's Weed, Deeds, § 13.08-13.10; 13 NY Jur, Covenants and Restrictions, §§ 47-48).

▪ Niagara Mohawk's cross claims against the Auers are similarly barred by applicable Statutes of Limitation. A cause of action for injury to property is governed by a three-year Statute of Limitations (CPLR 214, subd 4). Since the cross claims by Niagara Mohawk are based upon an alleged infringement of an easement, the cause of action sounds in trespass and the three-year limitation applies *(509 Sixth Ave. Corp. v New York City Tr. Auth.,* 15 NY2d 48; *O'Shaughnessy v John J. Barrett, Inc.,* 186 Misc 1040; 1 Weinstein-Korn-Miller, NY Civ Prac, par 214.16). Inasmuch as the Auers transferred the property on January 7, 1970, even were their activities up to that time to be considered a "continuing wrong" until that date, no cause of action could have accrued against them thereafter. The earliest date upon which Niagara Mohawk can claim that its cause of action is deemed interposed is May 12, 1976, i.e., a counterclaim is deemed interposed on date of service of the main complaint (CPLR 203, subd c). Thus, a trespass action is clearly barred. Moreover, even were Niagara Mohawk to assert some basis for the application of a six-year Statute of Limitations under CPLR 213 on the ground that infringement of the easement is a breach of a contractual obligation regarding the maintenance of electrical service, such an action would also be barred (see *Tarantelli v Tripp Lake Estates,* 23 AD2d 905, 906). Finally, since the Auers no longer have any property rights in the easement, the power company's cross claim considered as an action to recover real property or possession thereof is not viable.

▪ More troublesome is the resolution of plaintiffs' action against defendant, Niagara Mohawk, and its counterclaim against plaintiffs in which both seek summary judgment. We conclude as did Special Term that section 2001 of the Real Property Actions and Proceedings Law applies. Thus, Niagara Mohawk's counterclaim is barred by the two-year period of limitation contained in that statute. In order to reach this conclusion we necessarily construe the easement granted to Niagara Mohawk as containing a negative easement by implication. We do so not on account of the literal language of the easement itself, but by reason of the fact that Niagara Mo-

hawk has sought in this litigation "to recover damages for breach of the covenant or agreement". The thrust of its position stated in its counterclaim and upon its argument before us on this appeal brings it precisely within the applicable language of subdivision 2 of section 2001 of the Real Property Actions and Proceedings Law. Niagara Mohawk seeks to extend the literal language of the easement and to obtain a negative easement by implication for its benefit. At the same time, Niagara Mohawk argues that since the literal language of its easement is affirmative, section 2001 is not controlling. We find these arguments unpersuasive.

Looking merely at the language of the grant itself, we find no prohibition preventing the placement of mobile homes with respect to Niagara Mohawk's easement. Further, we cannot accept the argument that there should be a negative easement implied without the concomitant imposition of the two-year limitation of section 2001. To accept such an argument repudiates the ancient maxim "qui sentit commodum sentire debet et onus" ("He who derives the advantage ought to sustain the burden"). Since Niagara Mohawk is attempting to enforce a restriction (see *Trustees of Columbia Coll. v Lynch,* 70 NY 440, 447-448) on the use of the plaintiff's land predicated on its claim that there has been an "infringement of [its] easement and other interest created by the covenant" (Real Property Actions and Proceedings Law, § 2001, subd 1), it is, therefore, subject to the two-year limitation (Real Property Actions and Proceedings Law, § 2001, subd 2).

Also persuasive to the result we reach is the practical construction placed upon the easement by the parties themselves. At the outset, we recognize that the necessity of proper maintenance and the potentiality of a hazardous condition have generally impelled the courts in this and other States to enjoin both the placement of structures under power lines or to permit the power company to obtain removal of newly constructed encroachments where the easement permitted the placement of equipment on the owner's property and provided the right to maintain that equipment and trim trees (see, e.g., *Missouri Power & Light Co. v Barnett,* 354 SW2d 873 [Mo]; *Georgia Power Co. v Sullivan,* 217 Ga 699; *Carolina Power & Light Co. v Bowman,* 229 NC 682; *Horky v Kentucky Utilities Co.,* 336 SW2d 588 [Ky]; *Collins v Alabama Power Co.,* 214 Ala 643; *Youngstown Steel Prods. Co. v City of Los Angeles,* 38 Cal 2d 407; *City of Seattle v Nazarenus,* 60 Wn 2d 657; *New York*

*State Gas & Elec. Corp. v Swingle,* 39 Misc 2d 91; Correlative Rights of Dominant and Servient Owners in Right of Way for Electric Line, Ann., 6 ALR2d 205, and supplements).

We also note that the pleadings reveal a disagreement with regard to the placement of mobile homes under the electric lines. Niagara Mohawk asserts that the homes were placed under the power lines after the lines were erected. However, the Auers claim that in 1965 when the final power lines were installed mobile homes were already in place underneath the previously constructed lines. Mrs. Auer alleges that the original 1958 and 1959 power lines were constructed over mobile homes and mobile home sites. She further asserts, in her answer, that Niagara Mohawk was furnished with a map showing the location of both mobile homes and mobile home sites. Plaintiff Burrows verifies in his complaint that there has been no substantial change in the location of the mobile homes or mobile home sites since he purchased the property in January, 1970. However, the most crucial fact is undisputed. In its answer Niagara Mohawk admits that it never made a request or demand upon the Auers to move or relocate any of the mobile homes it now claims were placed under its electric lines and it admits, further, that at no time, until October, 1975, did it ever complain that there was any interference with or violation of its rights under the easements granted to it.

It is a long-settled rule that where an encroachment is not expressly prohibited by the terms of the grant and has been in place for an appreciable period of time without objection, as is the case here, any uncertainty as to the rights under the grant is to be interpreted by reference to the practical interpretation put upon it by the acts of the parties in the use of the easement. As we had occasion to say, "[t]he intention of the parties, however, could also be evidenced by the contemporary interpretation and practical construction which they placed on the agreement by their acts in the use of the right of way" *(Himes v McKinlay-Smyth,* 18 AD2d 1134, affd 13 NY2d 1081). Thus, the Tenth Circuit Court of Appeals held that a power line easement did not permit the implication of a right to enjoin encroaching structures where the power authority acquiesced in the prior construction of structures under the power lines. The court reasoned that the failure of the authority to contest prior construction gave rise to an inference that the owners of the servient premises were using

the premises in a manner consistent with the dominant tenement and that the parties by their conduct provided the means for the interpretation of the grant *(United States v Cross,* 477 F2d 317; see 28 CJS, Easements, § 91, p 770; 17 NY Jur, Easements and Licenses, § 133). The rule of deriving intent of the parties from the use made of the grant is not only one of long-standing in New York but it is also cited with approval by the commentators and has found acceptance in our sister States *(Bakeman v Talbot,* 31 NY 366, 369; *Onthank v Lake Shore & Mich. Southern R. R. Co.,* 71 NY 194, 198; *Herman v Roberts,* 119 NY 37, 43; *Immaculate Conception Church v Sheffer,* 88 Hun 335, 339, affd 156 NY 670; *Gayton v Lebedina,* 158 Cal App 2d 252; *Doody v Spurr,* 315 Mass 129; *Curran v Maple Island Resort Assn.,* 308 Mich 672; *Andrews v Connecticut Light & Power Co.,* 23 Conn Super 486, 185 A2d 78; *City of Seattle v Nazarenus,* 60 Wn2d 657, *supra; Carolina Land Co. v Bland,* 265 SC 98; 2 Thompson, Real Property, § 385 [repl 1961]; 17 NY Jur., Easements and Licenses, § 133; 25 Am Jur 2d, Easements and Licenses, § 23; Ann., 3 ALR3d 1256, 1262).

Regardless of whether the subject grant is construed solely as an affirmative easement or to contain a negative easement by implication, Niagara Mohawk's counterclaim must fail. Were it to be construed solely as an affirmative easement, then the alleged encroachments are not prohibited by the terms of the grant. Further, we are able to conclude for the reasons just stated that Niagara Mohawk's long-standing acquiescence in the use made of the servient premises by the Auers and the plaintiffs allegedly placing mobile homes under Niagara Mohawk's power lines did not unreasonably interfere with Niagara Mohawk's affirmative rights as dominant tenement under the easement granted it. On the other hand, were the grant to be construed to contain a negative easement by implication, Niagara Mohawk's counterclaim is barred by the two-year time limitation contained in section 2001 of the Real Property Actions and Proceedings Law.

Accordingly, summary judgment was properly granted dismissing Niagara Mohawk's counterclaim against the plaintiffs. Under these circumstances and because the existence of human habitations under power lines constitutes a hazardous condition (see, e.g., *Miner v Long Is. Light. Co.,* 40 NY2d 372, 380-381), the lines were relocated. The $7,100 cost of such

relocation, however, is one properly placed upon defendant, Niagara Mohawk.

The judgment should be affirmed.

SIMONS, J. (dissenting). I dissent from that portion of the court's decision which grants plaintiff summary judgment against defendant, Niagara Mohawk Power Corporation.

Defendant was the grantee of three affirmative easements permitting the construction and maintenance of electric service lines in plaintiff's trailer park. It is its contention, not factually resolved on this record, that the trailer owners wrongfully encroached on these easements.

Defendant's easements could be lost only by abandonment, conveyance, condemnation or adverse possession for the prescriptive period. In this case the prescriptive period is 10 years, not two years under section 2001 of the Real Property Actions and Proceedings Law, as the majority hold. Section 2001 applies only to negative easements and restrictive covenants. The difference between affirmative easements and negative easements, broadly stated, is this: an affirmative easement gives me the right to do something on your property; a negative easement or a restrictive covenant, gives me the right to prevent you from doing something on your property. The purpose of section 2001, as I understand it, is to quiet titles and to prevent burdensome litigation by neighbors over restrictions on the use one makes of his own property. It was not intended to restrict a grantee of an easement from making use of his own easement to the full extent of the interest conveyed (see Recommendations of Law Revision Commission Relating to Presumption of Release of Right to Enforce Certain Covenants Restricting the Use of Land, 1963 Report of NY Law Rev Comm, pp 341-346, NY Legis Doc, 1963, No. 65[K], pp 3-6). If section 2001 is applicable to the facts of this case, then it is similarly applicable to all utility companies maintaining thousands of miles of service equipment over customers' lands and places the burden of a short Statute of Limitations on them that is neither necessary nor desirable.

Furthermore there are numerous questions of fact, particularly those relating to when the trailers were parked within defendant's easements, whether the defendant had knowledge of them and whether the defendant had knowledge of them sufficient to estop it from seeking relief here. There is also a question concerning the proper construction of the easement

which may well require the introduction of parol evidence since it is contended that the easement granted included the right to remove encroaching structures. The majority opinion recognizes that there are factual issues; nevertheless, contrary to elementary rules of law it resolves them upon the affidavits and incomplete record before us and grants summary judgment to plaintiffs.

The judgment should be reversed and the matter remitted for trial.

HANCOCK, JR., and WITMER, JJ., concur with CARDAMONE, J. P.; DENMAN, J., not participating; SIMONS, J., dissents and votes to reverse the judgment and deny the motion in an opinion.

Judgment affirmed, with costs.