**LAWRENCE HODGE AND MARIA HODGE, Plaintiffs,**
**GOVERNMENT OF THE VIRGIN ISLANDS, Intervenor**
**v.**
**BLUEBEARD'S CASTLE, INC., Defendant**

Civil No. 925/1997

Territorial Court for the Virgin Islands

Division of St. Thomas and St. John

April 17, 2002

243

DENISE FRANCOIS, ESQ., Hodge & Francois, St. Thomas, Virgin Islands, *Attorneys for Plaintiffs*

DENISE GEORGE-COUNTS, ESQ., Department of Justice, St. Thomas, Virgin Islands, *Attorney for the Government*

GREGORY H. HODGES, ESQ. and BRAIN M. CASTRO, ESQ., Dudley, Topper & Feuerzeig, LLP, St. Thomas, Virgin Islands, *Attorneys for Defendant*

HODGE, *Judge*

## MEMORANDUM OPINION

(April 17, 2002)

Before the Court is Defendant Bluebeard's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant Bluebeard's contends that there are no genuine issues of material fact and that it is entitled to judgment in its favor as a matter of law. For the reasons set forth more fully below, Bluebeard's Motion for Summary Judgment shall be DENIED.

## FACTS

Bluebeard's owns a parcel of land in Estate Taarnebjerg, St. Thomas, Virgin Islands, including a portion of the road known as Frederiksberg Gade or the Bluebeard's Castle Road. For many years, Bluebeard's Castle Road was the only means of vehicular access to neighboring parcel 39C, owned by Plaintiffs Maria and Lawrence Hodge. (Aff. Maria Hodge at 4.) During 1994, for the first time since the Hodges purchased

244

the property in 1985, Bluebeard's built a fence across Bluebeard's Castle Road, and initially closed the fence between the hours of midnight and 5:00 a.m. When the gate was closed, the Hodges could not access their property without crossing Bluebeard's parking lot. (Aff. M. Hodge at 3.)

When the Hodges purchased the property, the only structures on Parcel 39C were the foundation of a house known as Villa Iota, a garage, and a wrought iron fence. Although Villa Iota burned down in 1981, the garage and fence remain on the property, and abut the disputed road. (Aff. M. Hodge at 1, 4.) By the time the house burned down, it had stood at the same location and was apparently occupied, for over 40 years. (Aff. M. Hodge at 2, 4.) In fact, Villa Iota and the garage appear in plans dated 1939, and the garage appears in a survey dated 1967. (Aff. M. Hodge, Ex. O, Q.)

The Hodges wrote to Bluebeard's on December 19, 1994, objecting to the fence. (Aff. M. Hodge, Ex. D.) At that time, they acknowledged that the Defendant desired greater security for its property. (Aff. M. Hodge at 3.) In light of this concern for security, the Hodges clarified that they had a right to unobstructed access to their property, but that they were willing to consent to the presence of the fence under certain conditions. (Aff. M. Hodge at 3.) Although the Hodges reiterated their position on February 15, 1995, August 22, 1995 and November 12, 1996, Bluebeard's did not respond. By the time of the Hodges sent their third letter in 1996, Bluebeard's had begun closing the fence and padlocking the gate both at night and during the daytime. (Aff. M. Hodge at 3.) The Hodges demanded that the fence be moved.

Nonetheless, in 1997 Bluebeard's put up a chain that blocked the Hodges' only remaining entrance. This chain prevented them from accessing their property by driving through Bluebeard's parking lot as they had been forced to do when the fence was closed. (Aff. M. Hodge at 3.) Thus, the Hodges wrote to Bluebeard's attorney on July 12, 1997, indicating that both the gate and the chain must be immediately removed. They received no response. (Aff. M. Hodge 4.)

On at least one occasion, Lawrence Hodge had to forcibly remove the chain from the road as he was attempting to access his garage. A security guard and a managerial representative from Bluebeard's confronted Mr. Hodge. The Bluebeard's employees informed Mr. Hodge that he should have come to the office and asked for a key. They also accused him of trespassing. This confrontation allegedly occurred in the presence of two

of Mr. Hodges friends, and was embarrassing for the Plaintiff. Thus, the Hodges have commenced this action for damages and injunctive relief, claiming that they have an easement along Bluebeard's Castle Road, and that they have been wrongfully deprived of its use. Alternatively, the Hodges maintain that the road is public.

In response, Bluebeard's notes that the roadway was badly damaged by Hurricane Marilyn in September 1995, and that much of the land supporting the road was washed away. Bluebeard's explains that it was only in response to this danger that it closed the gate at the bottom of the hill in an effort to prevent vehicular traffic from using the road. Bluebeard's also admits erecting the chain at the top of the roadway to prevent cars from coming down the hill. These actions were taken to prevent the "general public's use" of the road because Bluebeard's feared that someone may have been injured. (Memo. at 2.) Therefore, Bluebeard's denies that the Hodges have a right to use the road, and has filed a counterclaim seeking a declaration that the Bluebeard's Castle Road is not public.

## DISCUSSION

Summary judgment is proper when there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56. Thus, summary judgment will be granted against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The Court should grant summary judgment only where, after viewing all evidence presented in a light most favorable to the nonmoving party, it can conclude that no reasonable trier of fact could find for the nonmovant. *Id.*

In its memorandum, Bluebeard's sets out three arguments supporting its claim that it is entitled to judgment as a matter of law.[1] Each of these arguments has been opposed by the Hodges, and Bluebeard's has filed a

---

[1] Bluebeard's also contends that Plaintiffs have failed to set forth the necessary elements of an easement by implication. In response, the Plaintiffs correctly note that they have never argued that an easement by implication was created. (Opp. Memo. at 19.) Therefore, the Court will not address this issue, as it was never raised in the pleadings.

246

reply memorandum. In addition, each party has filed supporting affidavits and other documents. The Government has also filed an opposition memorandum, wherein it joins the Hodges opposition and agrees that the road is public. Having been fully briefed, the Court shall consider each argument in turn.

## 1. Public Roadways

Defendant Bluebeard's maintains that it is entitled to summary judgment because the disputed roadway is not a public road within the meaning of Virgin Islands law. Bluebeard's has submitted the relevant maps from the Department of Public Works, and the Deed by which it acquired title. Based on these documents, Bluebeard's contends, it is clear that at least part of the roadway is "private" rather than "public." In addition, Bluebeard's also points out that the private road was never dedicated to public use, and was never approved by the Legislature as required by 20 V.I.C. § 3a.

In response, the Plaintiffs have submitted an affidavit indicating that the public has used the road since 1912, and that the Plaintiffs and their successors have used the road for over 60 years to access parcel 39C and Villa Iota. (Opp. Memo. at 13.) Further, the Plaintiffs note that the road has been maintained by the Government and is commonly known as a public road. Thus, the Hodges claim that they have an easement over Bluebeard's land.

In addition, the Government has intervened in this action. It asserts that the road is indeed a public roadway and joins the Hodges' Opposition. (Intervenor's Opp. Memo.) In support of that contention, the Government notes that the public has freely and openly used the road for over fifty years. In addition, the Government notes that the Department of Public Works has maintained the road, has regulated traffic and posted street signs, and has repaired the road at Bluebeard's request.

■ In light of these contentions, the Defendants reliance on 20 V.I.C. § 3a is misplaced. While it is correct that the Code authorizes the Commissioner of Public Works to receive offers to dedicate private roads to public use, and it is also true that these dedications must be approved by the Legislature; it is not correct that this procedure represents the only way a road may become a "public road." For example, roads may become public through long term usage, see 3 V.I. Op. A.G. 189, or through eminent domain, see 20 V.I.C. § 3(b). Thus, the Court cannot

conclude that noncompliance with the dedication provisions means that the road is not public. Accordingly, viewing the evidence in a light most favorable to the Hodges, summary judgment must be denied with respect to this issue.

## 2. Easement by Prescription

Bluebeard's also argues that the Hodges have failed to allege and prove the requisite elements of an easement by prescription. Specifically, Bluebeard's claims that the Hodges have not alleged that their use of the roadway was "exclusive" as required by the adverse possession statute. In addition, Bluebeard's asserts that the Hodges' use of the road was permissive, and as a result, that their use cannot be hostile or adverse.

■ An easement by prescription can be established in favor of a private party, or in favor of the public, when the claimant shows that its use was adverse, continuous and uninterrupted for fifteen years. *Smith v. Benjamin*, 30 V.I. 51 (Terr. Ct. 1994); 3 Op. Atty. Gen. 228 (A.G. 1957); *see also* RESTATEMENT (THIRD) OF PROPERTY (Servitudes) §§ 2.17, 2.18 (2000) ("RESTATEMENT").[2] These elements are derived by analogy from the Virgin Islands adverse possession statute.[3] However, while similar to adverse possession, which results in a possessory estate, a prescriptive easement is different in both the extent of rights that result and in the nature of those rights. Therefore, somewhat different elements are required for prescription than for adverse possession.

Whether a property interest is claimed by adverse possession or prescription makes a difference in the requirements that must be met and in the nature of the interest acquired. To acquire an interest by adverse possession, the claimant must maintain exclusive possession of the claimed property during the statutory period. To

---

[2] RESTATEMENT (THIRD) OF PROPERTY (Servitudes) § 2.17 provides that a servitude is created by a prescriptive use of land, if the prescriptive use is (1) open or notorious, and (2) continued without effective interruption for the prescriptive period. In addition, periods of prescriptive use may be tacked together to make up the prescriptive period if there is a transfer between the prescriptive users. *Id.*

[3] The Virgin Islands Code provides that the uninterrupted, exclusive, actual, physical, adverse, continuous, notorious possession of real property under claim or color of title for 15 years or more shall ·be conclusively presumed to give title thereto, except against the government. V.I. CODE ANN. tit. 28 § 11. .

acquire a servitude, however, the claimant is only required to use the property during the prescriptive period. The use need not be, and frequently is not, exclusive. If the use is exclusive, the servitude obtained is exclusive; if not, the servitude is nonexclusive.

RESTATEMENT (THIRD) PROPERTY (Servitudes) § 2.17, cmt. a (2000). Thus, a claimant is only required to use the property during the prescriptive period; the use need not be, and often is not, exclusive. *Id.*

█ The term exclusive causes confusion when applied to prescriptive easements, because easements are generally not exclusive. Exclusive possession, in the context of adverse possession, is designed to ensure that the owner is put on notice that another is claiming an interest in his land. To the contrary, an easement is almost always nonexclusive because it is, by definition, a right to use another's land. *See* Op. A.G. 221 (A.G. 1962). Thus, one can claim an easement by prescription even where the public and the property owner also enjoy the right to use that same property. *See, e.g., Newsome v. Smith,* 289 S.E.2d (N.C. App. 1982) (public use of road not fatal to claim of prescriptive easement where plaintiff's use is different from use made by public); RESTATEMENT § 2.17 and cases cited therein. Because the Hodges need not show exclusive use, in the sense of being the only ones who use the road,[4] Bluebeard's argument that they have failed to allege a requisite element fails.

Bluebeard's also contends that any use of the road made by the Hodges was permissive, and therefore, that it was not hostile or adverse. In support of this conclusion, Bluebeard's notes that mere possession of another's land is presumed to be with permission.[5] *McNamara v.*

---

[4] Faced with the awkwardness of applying the exclusivity requirement to easement cases, some courts have interpreted the law as requiring that the "claimant's right to use the easement does not depend on a similar right in others." *Pettus v. Keeling,* 232 Va. 483, 352 S.E.2d 321 (Va. 1987). Even under this definition, Bluebeard's argument fails because the Hodges' claim is not being advanced merely as a member of the public—that is, their claim of right is not derivative of a similar right in others—to the contrary, they assert that they have an easement as the owners of Villa Iota.

[5] Comment g to section 2.16, *Presumptions as to initial character of use,* provides, in part:

*Christian*, 26 V.I. 109 (Terr. Ct. 1991). Therefore, Bluebeard's claims, no easement by prescription has been established, because the Hodges and the public were allowed to use the road.

 While it is true that mere possession is assumed to be permissive in an adverse possession case, when the use of another's property to access to your land is open and notorious that use may be hostile and adverse.[6] In this case the Hodges allege that their use is different from that made by the general public, in that they use the road to access their property. Such use of another's land may be hostile.[7] In addition, the fact that Bluebeard's blocked access to the road, failed to give the Hodges a key, and accused Mr. Hodge of trespassing provide additional support for the conclusion that the Hodges' use of the road was prescriptive rather than permissive. In a case, such as this one, where the Plaintiffs allege consistent and uninterrupted use of the road for a period of more than

---

Courts have developed a series of presumptions to assist in determining whether the use was permissive or prescriptive. ... The majority of American states apply a presumption that an unexplained, open or notorious use of land, continued for the prescriptive period, is adverse, or made pursuant to an implied servitude. This presumption of prescriptive use gives effect to the idea that long-continued uses create expectations of entitlement and favors existing users over newcomers who would disrupt established neighborhood patterns of land use and access. In states following the majority rule, particular fact situations overcome the presumption of prescriptive use, creating a counter-presumption that the initial use was permissive.

...

The presence of gates across roadways does not necessarily overcome a presumption of prescriptive use. Although it may give rise to an inference that the use is permissive, courts have found prescriptive servitudes in many cases despite the presence of gates.

[6] Neither party in this case has fully discussed the complicated system of presumptions that apply in this area of law. Therefore, in this case, the Court finds it sufficient to note that where a Plaintiff has alleged consistent use of a roadway for a period of more than fifty years, and where that use was both open and notorious, then an issue of material fact exists for the jury.

[7] *Newsome v. Smith*, 56 N.C. App. 419, 289 S.E.2d 149 (1982) (public use of road to reach claimant's land is not fatal to a claim of prescriptive easement, even though public use unrelated to plaintiff's land may be); *Guerin v. Yocum*, 506 S.W.2d 46 (Mo. Ct. App. 1974) (although plaintiff's predecessor had used road, also used by general public for many years, use from 1949 to 1964 was sufficient to raise presumption of hostility); *Patch v. Baird*, 140 Vt. 60, 435 A.2d 690 (1981) (evidence of general-public use does not negate claim of right by individual owner).

fifty years, they have established the existence of an issue of material fact. Thus, with respect to the Plaintiffs' alternative claims regarding the existence of an easement by prescription, summary judgment shall be DENIED.

### 3. Statute of Limitations

Finally, Bluebeard's argues that Counts I and II of the Complaint, seeking damages for interference with use and enjoyment of parcel 39C, are barred by a two-year statute of limitations. In response to this claim, the Hodges contend that these claims should be governed by the limitations period applicable to trespass to land—which in the Virgin Islands is six years.[8] Notwithstanding this argument, it is clear that claims for tortious injury to real property are subject to the two-year limitations period contained in title 5, subsection 31(5)(A) of the Virgin Island Code. *In Re Tutu Wells*, 846 F. Supp. 1243, 1253-54 (D.V.I. 1993).[9]

Count I of the Complaint states a claim for the "tort of intentionally depriving plaintiff of their use and enjoyment of parcel 39c." (Compl. ¶25.) In Count II, Plaintiffs seek damages for an

---

[8] In their Opposition Memorandum, Plaintiffs refer the Court to several cases that describe an interference with an easement as a "trespass." Plaintiffs contend that their claims for interference with use and enjoyment should be governed by the limitations period applicable to trespass to land—which in the Virgin Islands is six years. For example, *Oneida County Mobile Home Sales, Inc. v. Niagara Mohawk Power Corp.*, 63 A.D.2d 385, 407 N.Y.S. 2d 89 (1978) describes interference with an easement as a "cause of action for injury to property" and an action which "sounds in trespass." *Id.* at 92. While it is true that, at "common law, trespass was a form of action brought to recover damages for any injury to one's person or property" (BLACK'S LAW DICTIONARY, 6th Ed. (1991)) such is not the meaning of the term as it is used in the Virgin Islands Code. Rather, 5 V.I.C. § 31(B)(3)(C) addresses a trespass upon real property, and refers to a specific tort involving an entry onto another's land.

[9] In *James v. Antilles Gas Corp.*, 43 V.I. 37 (Terr. Ct. 2000), a case in which the Hodges were parties, the Territorial Court noted:

The statute of limitations governing claims for damage to real property was addressed by the District Court of the Virgin Islands in *In re Tutu Wells* ... There, the Court rejected the argument raised by the Hodges here, that claims for tortious injury to real property are subject to the six-year statute of limitations ... The Court expressly ruled that claims for tortious injury to real property are subject to the two-year limitations period contained in subsection 31(5)(A). *Id.* at 43.

251

interference with their right to use the "public road." (Compl. ¶27.) Although no specific tort is identified in these paragraphs, the conduct complained of refers to nuisance. Count I relates to the Hodges' claim that they have an easement, and thus states a claim for private nuisance. Count II relates to the Hodges' claim that the road is public, and therefore states a claim for public nuisance.

A private nuisance is a "nontresspassory invasion of another's interest in the private use and enjoyment of land." RESTATEMENT (SECOND) OF TORTS § 821D (1977) (hereinafter "RESTATEMENT"). It is "private" because the interference is with "a use of land that a person is privileged to make as an individual, and not as a member of the public." RESTATEMENT § 821D, cmt. c. It includes interferences with private easements and, at common law an action on the case—that is, one for damages—was the sole remedy. RESTATEMENT § 821D, cmt. a.

■ On the other hand, when a nuisance interferes with a public right—such as use of a public highway—it is a public nuisance. Where a public nuisance also interferes with a plaintiff's use and enjoyment of their private land, the nuisance may be both "public" and "private." RESTATEMENT § 821C, cmt. e. The right of access to land is a valuable right. If a public nuisance interferes with access to the plaintiff's land, then the harm suffered is a particular harm differing in kind from that suffered by the public. See *Allegheny General Hosp. v. Philip Morris, Inc.*, 228 F.3d 429 (3d Cir. 2000). Where this is the case, the plaintiff may recover for public as well as private nuisance.[10]

In contrast, a trespass involves one particular kind of interference. It is an interference with the right to "exclusive possession." RESTATEMENT (SECOND) OF TORTS § 821D, cmt d (1977). Put differently, a trespass involves an entry onto another's land.[11] However, "equity has not nicely

---

[10] To illustrate this point, the Restatement describes three situations where a Plaintiff can recover for deprivation of access to his land. In the first example, a defendant has blocked a public street and in so doing, has prevented the Plaintiff from using his garage. RESTATEMENT (SECOND) OF TORTS § 821C, Ill. 4-6. That plaintiff could recover for public nuisance, even if the access to his property was not completely blocked, but was simply rendered inconvenient. The same conclusion applied where there were other means of access, and only one entryway was blocked. *Id.*

[11] Significantly, the Plaintiffs allege an interference with "parcel 39c" and not with the road itself. There has been no allegation that the Defendant has entered onto parcel 39c.

252

observed the distinctions between the types of torts" and many courts use the terms nuisance and trespass imprecisely. RESTATEMENT § 822, cmt c. Nonetheless, it is clear that the Hodges have not alleged an entry onto parcel 39c, and therefore, have not stated a claim for trespass onto real property.

Having determined that Counts I and II state tort claims for private and public nuisance, this Court must apply the applicable two-year limitations period. *In re Tutu Wells*, 909 F. Supp. 980 (D.V.I. 1995). In so doing, it must first determine when that two-year period began to accrue. In *In re Tutu Wells*, 909 F. Supp. 980 (D.V.I. 1995), the District Court applied a two-year limitations period to a tort claim involving real property. The Court noted that, under the law of the Virgin Islands, it must apply both the discovery rule and the continuing torts doctrine to determine when a claim begins to accrue.[12] *Id.* at 985. The Court explained that a claim begins to accrue at "the latest time provided by either rule." *Id.*

The discovery rule provides that a cause of action begins to accrue when a plaintiff knows or should know of a wrongful act. *In re Tutu Wells*, 846 F. Supp. at 1249. In this case, it is uncontested that Hodges knew of Bluebeard's initial conduct "sometime in 1994." (Opp. Memo. at 23.) This is because in 1994, Bluebeard's "blocked plaintiffs' use of the easement" for the first time. (Opp. Memo. at 23.) This action was commenced more than two years later—on November 26, 1997. However, as the Third Circuit Court of Appeals explained in *Kichline v. Consol. Rail. Corp.*, 800 F.2d 356 (1986) "it does not follow, however, that the statute of limitations has extinguished all claims plaintiff has against defendant."

Our analysis does not end with the application of the discovery rule to the initial tortious act. *In re Tutu*, 909 F. Supp. 980, 988 (D.V.I. 1995); *Rodgers v. Ibec Housing Co.*, 12 V.I. 166 (D.V.I. 1975). To the contrary, the continuing tort doctrine provides:

---

[12] Defendants argue that, because the Third Circuit Court of Appeals adopted the discovery rule in *Kichline v. Consol. Rail Corp.*, 800 F.2d 356 (3d Cir. 1986), the continuing harm doctrine does not apply. However, as discussed above, the discovery rule and the continuing harm doctrine must both be applied, and are not inconsistent with one another.

A continuing tort is, in essence, a succession of reoccurring torts that result in damages that are recoverable *each time they occur*. In theory, each instance of damage should give rise to a new claim and, thus, a new date of accrual. *In re Tutu*, 909 F. Supp. at 988 [emphasis added].

It is true that the "continuing conduct of defendant will not stop the ticking of the limitations clock." *Kichline v. Consol. Rail Corp.*, 800 F.2d 356, 360 (3d Cir. 1986). A Plaintiff has only two years from the date that he knows a wrong has been committed to contest that wrong. When there is a continuing nuisance, however, whether each tortious interference is independently actionable and whether a new "wrong" has been committed must be determined.

■ While the discovery rule addresses the question of when, after a wrong has been committed, a cause of action begins to accrue, the continuing torts doctrine addresses when the "continuation" of certain conduct creates a series of actionable claims—rather than just one. This is why the District Court noted, that the result of the continuing torts doctrine is that "actions for temporary damages arising from recurring [tortious conduct] ... will accrue continuously." *Rodgers v. Ibec Housing Co.*, 12 V.I. 166 (D.V.I. 1975); *In re Tutu*, 909 F. Supp. at 988.

■ A continuing tort requires "continual unlawful acts, not continual ill effects from an original violation." *Sandutch v. Muroski*, 684 F.2d 252 (3d Cir. 1982); *Barnes v. American Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998). In this case, the Hodges claim that they were harmed whenever Bluebeard's blocked their access to their property by closing the gate at night and, later locking the chain. This sort of wrongdoing results in temporary injuries, that is, injuries which are "remedial or transient in nature such that [they] may be abated when the conduct ... ceases." *Id.* at 989. In addition, by adding the chain at the top of the road, and by locking and unlocking the gate at the bottom of the road *on a daily basis* until some time after 1995, the allegedly tortious conduct was recurring. (Letter of Nov. 12, 1996 from M. Hodge.)

■ To the extent that the defendant is continuously interfering with the Hodges' rights their cause of action accrues continually. Upon discovery of conduct, a plaintiff has two years to file his or her claim for nuisance. Thus, applying the two-year limitations period, the Hodges'

claims for tortious conduct that has occurred since November 1995 are not barred.

## CONCLUSION

Because genuine issues of material fact remain for determination by a jury, the Defendant's Motion for Summary Judgment shall be denied. In addition, having determined that Counts I and II of the Complaint state causes of action for private and public nuisance, those counts are governed by a two-year statute of limitations period, and, thus, are not barred insofar as they involve acts that have occurred since November of 1995.