DIRECTV, INC., Plaintiff,

v.

Joseph RODKEY, Defendant.

No. CIV.A. 3:04–68J.

United States District Court, W.D. Pennsylvania.

Feb. 16, 2005.

Peter V. Marcoline, Jr., Esq., Pittsburgh.

John W. Gibson, Esq., Pittsburgh.

### *MEMORANDUM OPINION AND ORDER*

GIBSON, District Judge.

This case comes before the Court on the Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment (Document No. 5). In consideration of the Defendant's Motion, the Plaintiff's Response to the Defendant's Motion to Dismiss (Document No. 10), the Court shall grant Defendant's motion in part and deny Defendant's motion in part for the following reasons.

**JURISDICTION**

Jurisdiction is proper in the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1331 based on federal question jurisdiction. Specifically, the Plaintiff has brought claims pursuant to the Communi-

cations Act of 1934, 47 U.S.C. § 151, *et seq.*, as amended by the Cable Communications Policy Act of 1984[1] (hereinafter the "Communications Act"), and the Electronic Communications Policy Act of 1986, 18 U.S.C. § 2510, *et seq.*, (hereinafter the "Wiretap Act"). The Court has supplemental jurisdiction of the Plaintiff's state law claim of Possession of Devices for Theft, 18 Pa.C.S. § 910,[2] pursuant to 28 U.S.C. § 1367.

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff is a "California-based company in the business of distributing satellite television broadcasts throughout the United States." (Document No. 4). Specifically, the Plaintiff's satellite programming "is received through the use of a fixed outdoor satellite dish [which] is designed to capture satellite signals." *Id.* The satellite dish is "connected by cable to an indoor satellite receiver which is then connected by cable to a television monitor." *Id.*

The satellite signals received by the satellite dish are "not intended to be usable without paying [the Plaintiff] a fee to use its television broadcast service." (Document No. 4). Thus, in order to prevent unauthorized reception and use of the Plaintiff's broadcast signals by individuals who have not paid for the Plaintiff's satellite broadcast service, the Plaintiff "uses encryption technology to digitally scramble the signal, making the signal unusable until it is unscrambled." *Id.* The component which unscrambles the signal is called a "[s]atellite [r]eceiver". *Id.* Each satellite receiver "contains a removable access card that manages the opening and closing of television channels offered by [the Plaintiff]". *Id.* The access card is electronically programmed by the Plaintiff to close or open specific television channels. *Id.*

The Plaintiff electronically directs the access card to "unscramble portions of the satellite signal" allowing paying customers of the Plaintiff's programming service to view selected "programs on their televisions and/or listen to certain high quality programs communicated by satellite." (Document No. 4). Thus, a customer pays to the Plaintiff a "subscription fee" tailored to the specific programming requested by the customer. *Id.* The fee reflects the "programming package" selected by the customer for which a customer receives a monthly service bill. *Id.* In addition, a customer can choose to purchase and to view programs offered on a "per-show or per-package basis". *Id.* In order to receive these "spontaneous" broadcasts, a customer orders a broadcast via his or her remote control, or a customer orders by placing a telephone call directly to the

1. Specifically, the Plaintiff seeks relief against the Defendant under 47 U.S.C. § 605(e)(3)(C) for the "unauthorized interception and receipt of satellite programming through the use of illegal satellite decoding devices, or by manipulation of the satellite system authorized to carry the satellite programing where the Defendant is located." (Document No. 4). The Plaintiff also seeks relief under 47 U.S.C. § 605(e)(4) upon the belief that the Defendant "knowingly, manufactured, assembled, or modified an electronic, mechanical or other device or equipment knowing or having reason to know, that the device or equipment is used primarily to facilitate the unauthorized decryption of satellite programming, or di-

rect-to-home satellite services, or is intended for any other prohibited activity." *Id.*

2. The Plaintiff alleges that the Defendant "knowingly possessed, used or assembled an unlawful telecommunication device that could be used for the commission of a theft of DIRECTV's telecommunication service or to decrypt, acquire of [sic] facilitate the decryption or acquisition of DIRECTV telecommunication service without the consent of DIRECTV" in violation of 18 Pa.C.S. §§ 910(a)(1)(i); (d)(1); (d)(2)(iv); (d.1)(2). (Document No. 4).

Plaintiff. *Id.* Each spontaneous purchase is recorded by the access card contained in the satellite receiver. *Id.*

The primary sources of revenue for the Plaintiff are the subscription fees and spontaneous purchases made by its customers. (Document No. 4). However, some individuals have been able to circumvent paying subscription fees and/or spontaneous purchases by employing the use of equipment and devices that "surreptitiously pirate [Plaintiff's] signals (collectively referred to as "Pirate Access Devices" ")". *Id.* These Pirate Access Devices allow individuals access to the Plaintiff's programming without paying subscription fees to the Plaintiff. *Id.*

By conducting various investigations, the Plaintiff was able to "identify several businesses that acted as warehouses and forwarding entities for many Internet-based companies that manufactured and/or sold" the Pirate Access Devices. (Document No. 10). Based upon these investigations, the Plaintiff "executed Civil Writs of Seizure on several of these clearing houses." *Id.* For example, the Plaintiff executed such writs on or about January 28, 2002 and January 16, 2003 through which the Plaintiff obtained documents regarding the Defendant in the case *sub judice.* *Id.*

On or about January 28, 2002, the Plaintiff "executed a writ of seizure" on "Michael Worley and EQ Stuff, Inc.," (hereinafter "EQ Stuff"). (Document No. 4). During the execution of this writ, the Plaintiff was able to obtain business records of EQ Stuff which revealed an "ongoing illegitimate enterprise ... focused on distributing electronic devices primarily designed for the surreptitious interception of satellite communications" broadcast by

the Plaintiff. *Id.* Specifically, upon information gathered during this raid, it was discovered by the Plaintiff that the Defendant "purchased four (4) 'EQ Bootloaders' from EQ Stuff" on or about May 4, 2001. *Id.*

Similarly, on or about January 16, 2003, "pursuant to an order of the Montreal Superior Court in Quebec, Canada," the Plaintiff "executed a civil seizure upon a business named 'Easybuy 2000' " (hereinafter "Easybuy"). (Document No. 4). During the course of this raid on Easybuy's business, the Plaintiff obtained Easybuy's business records, which included customer lists of those who purchased Pirate Access Devices. *Id.* Specifically, the business records revealed "orders, invoices, electronic communications, shipping documentation, purchase receipts, [and] credit card receipts" evidencing an ongoing illegal enterprise conducted by Easybuy. *Id.* Furthermore, it was discovered by the Plaintiff that the Defendant "purchased one (1) 'SAT–HU Sureshot' from Easybuy 2000" on or about December 12, 2002. *Id.* The Plaintiff also observed during this raid that although Easybuy was physically located in Montreal, Canada, "due to the expansive reach of internet sales," Easybuy was able to conduct a nationwide and cross-country sales effort within the United States aimed at distributing "electronic devices primarily designed for the surreptitious interception of satellite communications broadcast" by the Plaintiff.[3] *Id.*

Subsequent to the execution of the above-referenced writs, the Plaintiff was able to obtain various documents identifying numerous individuals, including the Defendant, who allegedly received and/or transmitted unauthorized Satellite Pro-

---

**3.** Easybuy customers could easily access its business on an internet website named "Easy-

buy2000.com". (Document No. 4).

gramming. (Document No. 10). Thereafter, on April 1, 2004, the Plaintiff filed the above-captioned civil action against the Defendant. (Document No. 1). Approximately, two months later, on June 4, 2004, the Plaintiff filed an Amended Complaint. (Document No. 4).

In the Amended Complaint, the Plaintiff added allegations regarding the purchase, by the Defendant, of "four (4) 'EQ Bootloaders' [from] EQ Stuff on ·May 4, 2001", and the Amended Complaint removed a violation of 18 U.S.C. § 2512 which was included in the original Complaint. (Document Nos. 4 & 10). Consequently, the Amended Complaint includes the following charges: Count I Damages for Violations of Cable Communications Policy Act (47 U.S.C. § 605(e)(3)(C)) (alleging that the Defendant "effected unauthorized interception and receipt of Satellite Programming through the use of illegal decoding devices, or · by manipulation of the satellite system authorized to carry the Satellite Programming where Defendant is located ..."); Count II Damages for Violations of 18 U.S.C. § 2511 (alleging that the Defendant "intentionally intercepted, endeavored to intercept, or procured other persons to intercept electronic communications from DIRECTV"); Count III Damages for Willful Assembly or Modification of Devices or Equipment (47 U.S.C. § 605(e)(4)) (alleging that the Defendant "knowingly, manufactured, assembled, or modified an electronic, mechanical or other device or equipment

knowing or having reason to know, that the device or equipment is used primarily to facilitate the unauthorized decryption of Satellite Programming ..."); and Count IV Possession of Devices for Theft in Violation of Pennsylvania Consolidation Statutes (18 Pa.C.S. § 910)(alleging that the Defendant "knowingly possessed, used or assembled an unlawful telecommunication device that could be used for commission of a theft of DIRECTV's telecommunication service ..."). (Document No. 4).

On July 15, 2004, the Defendant filed a Motion to Dismiss, or in the alternative for Summary Judgment (Document No. 5), stating that the Plaintiff's claims regarding the business records obtained from EQ Stuff on January 28, 2002 are barred by the applicable two-year statute of limitation.[4] *Id.*

## STANDARD

### A. Statute of Limitations Raised in a Motion

■ Under the Federal Rules of Civil Procedure, a statute of limitations defense must be raised in the answer since Rule 12(b) generally does not permit such a defense to be raised by motion. *Robinson v. Johnson,* 313 F.3d· 128, 134–35 (3d Cir. 2002), *cert. denied,* 540 U.S. 826, 124 S.Ct. 48, 157 L.Ed.2d 49 (2003). However, as our Court of Appeals explained in *Robinson,* "the law of this circuit (the so-called 'Third Circuit Rule') permits a limitations defense to be raised by a motion under

---

4. Both parties recognize that the applicable statute of limitations in the case *sub judice* is two years. Specifically, the Court observes that a two-year statute of limitations applies to claims arising under the Cable Communications Policy Act and the Pennsylvania piracy statute. (Document Nos. 6 & 10); *See Kingvision Pay–Per–View v. 898 Belmont, Inc., dba El Toro Bar,* 366 F.3d 217, 224–225 (3d Cir.2004). Similarly, a two-year statute of

limitations period applies to claims brought under the Electronic Communications Privacy Act, which provides:

> A civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation.

18 U.S.C. § 2520(e).

Rule 12(b)(6), but only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.* at 135. Yet, "[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)".[5] *Id.*

In the case *sub judice,* the Court determines that the Defendant's statute of limitations defense is properly raised in his Motion to Dismiss, or in the alternative, Motion for Summary Judgment, as it appears from the Amended Complaint (Document No. 4) that the Plaintiff's claims are time-barred. Specifically, the Plaintiff's Amended Complaint sets forth that the Plaintiff conducted a raid on the business of EQ Stuff on January 28, 2002, whereupon documents and records were retrieved indicating that the Defendant purchased Pirate Access Devices from EQ Stuff. However, the complaint on its face shows that the action was filed outside of the applicable limitations period. Specifically, the Plaintiff did not file its civil claim against the Defendant regarding these purchases until June 4, 2004, well beyond the applicable two-year statute of limitations period. However, the Court's inquiry does not end with merely observing that this action was filed more than two years after the documents and records were discovered on January 28, 2002. In order to complete its inquiry, the Court shall determine whether any legal rules toll or otherwise abrogate the applicable limitations period set forth in the Plaintiff's various claims.

**B. Conversion of Motion to Dismiss Pursuant to Rule 12(b)(6)**

Next, the Court must address whether the Defendant's Motion should be considered a motion to dismiss under Federal Rule of Civil Procedure 12, or a motion for summary judgment under Rule 56. For example, Rule 12(b) provides that "[i]f, on a motion [pursuant to Rule 12(b)(6) ], matters outside the pleading are presented to the court, the motion shall be treated as one for summary judgment ... and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion." Fed.R.Civ. P. 12(b). Thus, when the Court is presented with a motion to dismiss pursuant to Rule 12(b)(6) along with evidentiary attachments, "the Court issues a notice to the parties of the conversion to a Rule 56 motion." *Smith v. County of Bucks,* 2004 WL 868278, *. 6 (E.D.Pa.2004); *see* 5A Charles. A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1366 (2d ed. 1990 & Supp.2003); *see also Pryor v. NCAA,* 288 F.3d 548, 560 (3d Cir.2002)(*quoting* 62 Fed.Proc., L.Ed. § 62:508).

■ Although notice by the court is the normal "conversion" situation, the "Third Circuit has consistently held, however, that where a defendant's motion is specifically denominated as a motion for dismissal or in the alternative summary judgment and contains 'matters outside the pleading' to which the plaintiff does not object, the Court may consider the motion as one for summary judgment without additional notice to the parties, especially if the plaintiff's response also contains external materials." *Smith,* 2004 WL 868278, at. *6 (quoting Hilfirty v. Shipman,* 91 F.3d 573, 578–79 (3d Cir.1996)) (holding that district court did not err in considering under Rule 56 motion for dismissal or alternatively summary judgment where plaintiff re-

---

**5.** *See DIRECTV v. Gazzo, et al.,* Civ. Action No. 03–1353, *2, in the U.S. Dist. Court, W.D. Pa. (July 7, 2004) ("Plaintiff's complaint does not demonstrate that its claims against the defendants are time barred as a matter of law.") (Document No. 10, Exhibit).

sponded in kind without objection); *see also Scott v. Graphic Communications Int'l Union, Local 97–B,* 92 Fed.Appx. 896, 899 (3d Cir.2004) (same); *In re Rockefeller Ctr. Props., Inc., Sec. Litig.,* 184 F.3d 280, 288–89 (3d Cir.1999) ("*Hilfirty* explicitly states that the 'primary reason' notice was deemed adequate was that some of the motions to dismiss had been framed in the alternative as motions for summary judgment."); *see also* Wright & Miller, *supra,* § 1366 n. 26.

■ In the case *sub judice,* the Defendant explicitly denominated his motion as a motion for dismissal, or in the alternative, summary judgment. (Document No. 5). The Defendant also attached external materials, including three witness declarations regarding the investigations performed by the Plaintiff preceding the January 28, 2002 raid on EQ Stuff. (Document No. 5, Exhibits A, B, & C). Moreover, the Plaintiff's response to the Defendant's motion attached a relevant district court ruling addressing issues similar to those raised in the Defendant's motion and cites to the district court ruling in its response. (Document No. 10). Accordingly, the Court determines that the notice provided by the Defendant to seek summary judgment review is adequate, and the Court will therefore consider the Defendant's motion pursuant to Rule 56.

## C. Motion for Summary Judgment

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [6]

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e., the material facts, however, will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. *Id.* In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248–49, 106 S.Ct. 2505. In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute, or whether the evidence is so one-sided that the movant must prevail as a matter of law.

To demonstrate entitlement to summary judgment, the moving party is not required to refute the essential elements of the cause of action. The moving party needs only to point out the absence or insufficiency of the evidence offered in support of those essential elements. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23,

---

**6.** The Court also observes that in regard to a Rule 56 motion, "the court may take judicial notice of other cases involving the same subject matter or presenting issues of a related nature between the same parties, even though the other cases would not be considered binding on the parties by virtue of either claim or issue preclusion." Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 3d § 2723.

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once that burden has been met, the non-moving party must identify affirmative evidence of record that supports each essential element of his cause of action.

A non-moving party may not successfully oppose a summary judgment motion by resting upon mere allegations or denials contained in the pleadings, or by simply reiterating those allegations or denials in an affidavit. *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Rather, the non-moving party must offer specific evidence found in the record that contradicts the evidence presented by the movant and indicates that there remain relevant factual disputes that must be resolved at trial. *See id.* If the non-moving party does not respond in this manner, the court, when appropriate, shall grant summary judgment. Fed.R.Civ.P. 56(e).

Accordingly based upon the standards set forth in A, B, and C above, the Court has reviewed Defendant's Motion for Summary Judgment.

## DISCUSSION

Initially, the Court observes that the Plaintiff contends in its Response in Opposition to Defendant's Motion to Dismiss (Document No. 10) that it "does not seek relief on, an earlier, separate purchase by Defendant from EQ Stuff on or about May 4, 2001 of four (4) EQ Bootloaders ..." which are the subject of Defendant's Motion to Dismiss. *Id.* at p. 2. Rather, the Plaintiff asserts that its claims are predicated upon the Defendant's Easybuy purchase. *Id.*

Although the Court recognizes the Plaintiff's contention in its Response regarding the basis for its claims, the Court also notes that the Plaintiff later asserts an alternative to Defendant's affirmative defense under the statute of limitations. Specifically, the Plaintiff contends that the EQ Stuff purchases are not barred by the statute of limitations pursuant to the discovery rule, and/or the continuing violation doctrine. (Document No. 10). Accordingly, in order to be thorough this Court shall address each argument presented by both parties regarding the EQ Stuff purchases.

### A. 18 U.S.C. § 2511

The Court first considers whether the Plaintiff's second cause of action pursuant to 18 U.S.C. § 2511 and based upon the execution of a writ of seizure on EQ Stuff, is barred by the statute of limitations. Specifically, count two of the Plaintiff's Amended Complaint asserts that:

> 35. ... DIRECTV alleges that Defendant intentionally intercepted, endeavored to intercept, or procured other persons to intercept electronic communications from DIRECTV. Defendant further disclosed or endeavored to disclose to others the contents of electronic communications knowing, or having a reason to know, that the information was obtained through the interception of electronic communications in violation of 18 U.S.C. § 2511. Upon information and belief, Defendant further intentionally used or endeavored to use the contents of electronic communications knowing, or having reason to know, that the information was obtained through the interception of electronic communications in violation of 18 U.S.C. § 2511.

(Document No. 4, ¶ 35).

The Court observes that although the Plaintiff's Amended Complaint does not appear to address specific subsections of § 2511, the following subsections are possibly at issue:

(1) Except as otherwise specifically provided in this chapter any person who—

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication [or]

\* \* \* \* \* \*

(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection . . .

\* \* \* \* \* \*

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. §§ 2511(1)(a), (c) & (d).

The Court further observes that the Plaintiff's civil action for damages pursuant to 18 U.S.C. § 2511 is created by 18 U.S.C. § 2520(a). Section 2520(a) provides the following:

[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a). As noted earlier, a civil action under § 2520(a), *see* fn. 5, "may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e). Accordingly, the Court must first determine the date of accrual for the Plaintiff's cause of action regarding EQ Stuff purchases by the Defendant.

### 1. Date of Accrual

■ The Third Circuit has held that "[t]he statute of limitations begins to run from the time the cause of action accrued," meaning "when the first significant event necessary to make the claim suable occurs." *Lake v. Arnold,* 232 F.3d 360, 366 (3d Cir.2000). For example, a civil action under 18 U.S.C. § 2520(a) "may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e).

In construing the two-year limitations period in the federal statute 18 U.S.C. § 2520(e), courts addressing claims similar to those raised by the Plaintiff against various defendants across the country have held that "the statute bars a suit if the plaintiff had such notice as would lead a reasonable person either to sue or to launch an investigation that would likely uncover the requisite facts." *Sparshott v. Feld Entertainment, Inc.,* 311 F.3d 425, 428–29 (D.C.Cir.2002); *see also Davis v. Zirkelbach,* 149 F.3d 614, 618 (7th Cir. 1998) (holding that the limitations period accrues when the plaintiff is put "on inquiry notice that his rights might have been invaded", i.e., "had reason to know that something was afoot"); *accord, Lanier v. Bryant,* 332 F.3d 999, 1004 (6th Cir.2003). Additionally, it has been determined that for the purposes of 18 U.S.C. § 2520(d) "a wiretap plaintiff need *not* know the identity of the specific violator who caused the plaintiff's wiretap injury" in order for the cause of action to accrue. *Directv, Inc. v.*

*Thomas,* 329 F.Supp.2d 949, 952 (E.D.Mich.2004). (emphasis added). Therefore, *"[u]nless a statute provides otherwise,* the statute of limitations begins to run at the time when a complete cause or right of action accrues or arises, which occurs as soon as the right to institute and maintain a suit arises." *In re Cases Filed by DIRECTV, Inc.,* 344 F.Supp.2d 647, 654 (D.Ariz.2004) (*quoting* 54 C.J.S. *Limitations of Actions* § 81 (1987)). (emphasis added).

In the case *sub judice,* the Defendant, in support of the Motion to Dismiss, argues that the Plaintiff "actually discovered its cause of action through investigations preceding January 28, 2002", and the date of accrual is "at the latest, on or about January 28, 2002." (Document No. 5). Specifically, the Defendant asserts in its motion that pursuant to 18 U.S.C. § 2520(e) the "plaintiff did have knowledge of the violation(s) [charged,] as well as the identity of some of the perpetrators of the questioned activity [as early as] September of 2001." (Document No. 6).

Defendant has provided evidence indicating that as early as September of 2001 the Plaintiff obtained "various records showing the names of individuals who purchased or placed orders for the various devices". (Document No. 6). For example, one declaration offered by the Defendant asserts that the declarant was contacted by the Plaintiff on "September 12, 2001" and prompted to "[contact] a web site advertising the sale of certain devices . . . ." *Id.* Consequently, the Defendant urges that the cause of action accrued on the date that Plaintiff discovered it had been injured, and that that injury was caused by another party's conduct, which was "as early as September 12, 2001. . ." *Id.*

Alternatively, the Defendant asserts that the Plaintiff's cause of action against the Defendant regarding the EQ Stuff purchases accrued on the date the Plaintiff executed the writ of seizure against EQ Stuff. (Document No. 6). Specifically, the Amended Complaint (Document No. 4), "shows on its face that the Plaintiff reasonably discovered that the Defendant first ordered devices on May 4, 2001 by reason of the execution of a writ of seizure on or about January 28, 2002." *Id.* Therefore, pursuant to the two-year statute of limitations applicable in the case *sub judice,* the Defendant claims that the Plaintiff's Amended Complaint shows on its face that its claims against the Defendant based upon EQ Stuff purchases are barred by the statute of limitations. *Id.*

Conversely, the Plaintiff alleges that although the two-year statute of limitations applies, the federal statute, 18 U.S.C. § 2520(e) expressly incorporates the discovery rule, which allows the Plaintiff to pursue its claims against the Defendant by delaying the running of the statute "until the plaintiff knew, or through the exercise of reasonable diligence should have known, of the injury and its cause." (Document No. 10) (*quoting Sterling v. Stack Gallagher,* 1998 WL 84006, at *3, 1998 U.S. Dist. LEXIS 2023, *8–9 (E.D.Pa., Feb. 26, 1998)). In furtherance of this argument, the Plaintiff asserts that due to the sheer volume of records and documents retrieved during the January 28, 2002 raid upon EQ Stuff, additional time was needed by the Plaintiff to investigate various prospective defendants and to determine the nature of the injuries subsequently alleged by Plaintiff. (Document No. 10).

In order for the Court to determine the accrual date, i.e., when the statute of limitations should begin regarding Plaintiff's claim against the Defendant under 18 U.S.C. § 2511, the Court will address the application of the discovery rule to the specific circumstances of this case.

## 2. Discovery Rule

■ Initially, the Court notes that the Defendant is correct in asserting that the language of 18 U.S.C. § 2520(e) [7] expressly incorporates the discovery rule into the applicable federal statute of limitations. 54 C.J.S. *Limitations of Actions* § 87 (1987)(quoted in *In re Cases Filed by DI-RECTV, Inc.*, 344 F.Supp.2d at 654). Generally, the discovery rule "applicable to federal statutes of limitations is that the limitation period begins to run when the claimant discovers or in the exercise of reasonable diligence should have discovered the acts constituting the alleged violation." *Id.* In other words, the discovery rule provides "a limited exception to the statute of limitations bar by tolling the date that the statute limitations begins to run until the time that the plaintiff knows or reasonably should know" the following: "(1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *DiCicco,* 308 F.Supp.2d at 534 *(quoting Lang, infra )(citing Cappelli, infra ).* Thus, when the discovery rule is invoked, "the limitations period begins to run when the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he needs to investigate to determine whether he is entitled to redress." *Id.* (internal quotations and citations omitted).

Having determined that the discovery rule is applicable to Plaintiff's federal statute claim, the Court must determine when the Plaintiff knew or reasonably should have known that it had been injured, and that its injury had been caused by another party's conduct, i.e., the accrual date.

7. *See supra,* p. 596.

8. This particular civil action includes co-defendants, Bryan Thomas and Thomas Suggs.

## 3. Relevant Case Law

The Court observes that various district courts across the United States have engaged in similar analysis regarding the application of the discovery rule to claims set forth by the Plaintiff against various defendants. For example, in *Directv, Inc. v. Thomas,* 329 F.Supp.2d 949, (E.D.Mich. 2004), the court determined that the statute of limitations began to run on the date when the plaintiff received records implicating the defendants [8] in the alleged violations. Specifically, the court held the following:

> ... Directv's evidence shows that it was not aware of [the defendants' purchases] until September 14, 2001, when [the seized company] turned over ... [additional] records implicating Thomas and Suggs....
>
> \*　\*　\*　\*　\*　\*
>
> ... the records seized on May 25, 2001, [during the raid] did not provide Directv with any indication that the specific violations at issue had occurred. Therefore, ... the date of the ... [seized company] raid did not initiate the running of the limitations period ... because they are not the dates on which Directv first had a reasonable opportunity to discovery the respective violations of the Wiretap Act that are the subject matter of these two lawsuits.

*Thomas,* 329 F.Supp.2d at 953.

Conversely, in *DirecTV, Inc. v. Brady,* 2004 WL 1752853 (E.D.La. Aug.4, 2004), the district court determined that the date initiating the running of the limitations period was the "date on which the writs of seizure were executed ('the raids')". *Brady,* 2004 WL 1752853, at \*5 (quoted in *In*

*Directv, Inc. v. Thomas,* 329 F.Supp.2d 949 (E.D.Mich.2004).

*re Cases Filed by DIRECTV, Inc.,* 344 F.Supp.2d at 655). Specifically, it was the date of the raids which ultimately "led to plaintiff's receipt of business records and the discovery of the defendants' identities and their violations." *Id.* Thus, the court determined based upon the facts in *Brady* that the plaintiff had a reasonable opportunity to discover the alleged violations on the date when the writs of seizure were executed. *Id.* Similarly, in *DirecTV, Inc. v. Weiss,* 2004 WL 1774621, *3 (E.D.Pa. 2004), the court determined that the plaintiff had a reasonable opportunity to discover the violations on the date the writs of seizure were executed, i.e., the date of the raids.[9] *See also DirecTV, Inc. v. Wright,* 2004 WL 2983836, *7 (N.D.Ga.2004) (Although plaintiff argued that "after the sei-

zure of the records on January 24, 2002, the [c]ourt should toll the start of the statute of limitations to permit [p]laintiff time to organize the seized records...", the court determined that the plaintiff had a reasonable opportunity to discover the violation "when it executed the writ of seizure on EQ Stuff on January 24, 2002.")

■ In the case *sub judice,* the Court determines that the seizure of the business and financial records which led the Plaintiff to the discovery of the Defendant's purchases from EQ Stuff occurred on January 28, 2002. However, the Court also observes that the gravamen of the Plaintiff's Amended Complaint under 18 U.S.C. §§ 2511(a), (c), and (d) is the Defendant's "alleged unauthorized *interception*[10] and

9. The Court also observes that in the case of *DIRECTV, Inc. v. Schlee,* Civil Action No. 03–1823 (W.D.Pa., July 12, 2004), which was referenced by the Defendant in his Motion to Dismiss, Chief Judge Donetta W. Ambrose adopted the Report and Recommendation prepared by Magistrate Judge Robert C. Mitchell which granted the defendant's motion to dismiss the amended complaint. Specifically, the court held that based upon the federal statute 18 U.S.C. § 2520(e), the application of the discovery rule, and relevant case law, (*see Andes v. Knox,* 905 F.2d 188, 189 (8th Cir.1990), *cert. denied,* 498 U.S. 952, 111 S.Ct. 373, 112 L.Ed.2d 335 (1990) ("the cause of action accrues when the claimant has a reasonable opportunity to discover the violation, not when [it] discovers the true identity of the violator or all of the violators"); *Sparshott v. Feld Entertainment, Inc.,* 311 F.3d 425, 430 (D.C.Cir.2002)("a plaintiff need not even know the perpetrators of [the illicit activity] if knowledge of [it] would lead to discovery of the perpetrators"); *New Castle County v. Halliburton NUS Corp.,* 111 F.3d 1116, 1124 (3d Cir.1997)("The discovery rule does not delay the running of the statute of limitations until a plaintiff is aware of all the facts necessary to bring its cause of action. Under the discovery rule, a claim accrues upon awareness of actual injury, not upon awareness that the injury constitutes a legal wrong.... Further, the discovery rule does not delay the accrual of a cause of action until

the plaintiff has identified every party who may be liable on its claim.")) "Directv's claims accrued on or about November 3, 2001 when it conducted its raid, learned of its injuries, and had a reasonable opportunity to discover the alleged statutory violations at issue." *Schlee,* at *7.

While this Court strictly adheres to the policy of comity among the federal district courts, the Court notes that factual distinctions exist between *DIRECTV, Inc. v. Schlee, supra,* and the case *sub judice.* Specifically, the Court recognizes the specific subsections of 18 U.S.C. § 2511 at issue in the case *sub judice* relate to the Plaintiff's claims of the "interception" of satellite signals as set forth in Plaintiff's Amended Complaint. (Document No. 4). In *Schlee,* however, the Report and Recommendation does not specify those subsections at issue before the court. Accordingly, the Court in the case *sub judice* proceeds in its analysis with attention to the particular subsections of 18 U.S.C. § 2511 raised in Plaintiff's Amended Complaint. (Document No. 4).

10. 18 U.S.C. § 2510(4) defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Quoted in In re Cases Filed by DIRECTV, Inc.,* 344 F.Supp.2d at 655; n. 27.

use of the [P]laintiff's satellite programming, not the [D]efendant's purchases of unlawful devices." *In re Cases Filed by DIRECTV, Inc.*, 344 F.Supp.2d at 655. (emphasis added). In other words, the Defendant's assertions that the Plaintiff's general awareness that widespread piracy was occurring, as evidenced by Plaintiff's contact of the EQ Stuff website on September 12, 2001, does not give rise to a cause of action for a specific violation such that the Plaintiff would have had a reasonable opportunity to discover the alleged violations on Defendant's suggested date. Similarly, the Defendant's date of purchase of the devices on May 4, 2001 and the date of execution of the writ of seizure on January 28, 2002 do not initiate the running of the limitations period in the case *sub judice* because these dates are not the dates on which the Plaintiff first had a reasonable opportunity to discover the respective violations under 18 U.S.C. § 2511, i.e., the dates of interception.

■ Accordingly, the Court determines that the accrual date, or the date when the Plaintiff first had a reasonable opportunity to discover the Defendant's violation of 18 U.S.C. §§ 2511(a), (c), and (d), presents a genuine issue of material fact which cannot be determined by the Court on the Defendant's Motion to Dismiss, or in the alternative, Motion for Summary Judgment.

Thus, viewing the facts and drawing all reasonable conclusions therefrom in a light most favorable to the non-moving party, the Court determines that "when an action has accrued under a discovery-based statute of limitations, '[t]he questions of when [the alleged wrongdoing] was or should have been discovered is a question of fact.'" *Nevada Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1307 (9th Cir.1992)(*quoting Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 877 (9th Cir.), *cert. denied*, 469 U.S. 932, 105 S.Ct. 329, 83 L.Ed.2d 265 (1984))(cited in *In re Cases Filed by DIRECTV, Inc.*, 344 F.Supp.2d at 655–56). Accordingly, the Defendant's Motion for Summary Judgment regarding claims under 18 U.S.C. § 2511 and Defendant's alleged interception and use of Plaintiff's satellite programming via EQ Stuff purchases is denied.

**B. 47 U.S.C. §§ 605(e)(3)(c) & (3)(4)**

The Court next considers whether the Plaintiff's first and third causes of action based upon 47 U.S.C. § 605(e)(3)(C) [11] and 605(e)(4) [12] are barred by the applicable statute of limitations. Specifically, count one of the Plaintiff's Amended Complaint alleges the following:

29. DIRECTV alleges on information and belief, that Defendant effected un-

---

**11.** 47 U.S.C. § 605(e)(3)(C) provides for damages for violations of the Cable Communications Policy Act, and those "[d]amages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with" the subsections under 605(e)(3)(C).

**12.** 47 U.S.C. § 605(e)(4) provides the following:

Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the un-

authorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) of this section, shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both. For purposes of all penalties and remedies established for violation of this paragraph, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation.

47 U.S.C. § 605(e)(4).

authorized interception and receipt of Satellite Programming through the use of illegal satellite decoding devices, or by manipulation of the satellite system authorized to carry the Satellite Programming where Defendant is located, or by such other means which are unknown to DIRECTV and known only to Defendant.

(Document No. 4). Furthermore, count three alleges the following:

39. Upon information and belief, Defendant knowingly, manufactured, assembled, or modified an electronic, mechanical or other device or equipment knowing or having reason to know, that the device or equipment is used primarily to facilitate the unauthorized decryption of Satellite Programming, or direct-to-home satellite services, or is intended for any other prohibited activity. Upon information and belief, Defendant actively programmed and reprogrammed DIRECTV Access Cards and designed electronic systems for use in surreptitiously obtaining DIRECTV Satellite Programming. Further, by removing and inserting Pirate Access Devices and/or inserting illegally programmed Access Cards into valid DIRECTV Receivers, Defendant engaged in the unlawful assembly and/or modification of devices primarily of assistance in the unauthorized decryption of Satellite Programming.

(Document No. 4).

█ Initially, the Court recognizes that 47 U.S.C. § 605 is part of the Cable Communications Policy Act of 1984, which amended the Communications Act of 1934. A person violates Section 605 by "receiving," "assisting in receiving" or "intercepting" radio transmissions without proper authorization. 47 U.S.C. § 605(a). In particular, Section 605(a) provides:

(a) **Practices prohibited**

Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, . . .

47 U.S.C. § 605(a). Additionally, the Third Circuit "has interpreted Section 605(a) as providing liability for cable pirates who directly intercept satellite transmissions." *DirecTV, Inc. v. DeCroce*, 332 F.Supp.2d 715, 718 (D.N.J.2004)(citing to *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 200 (3d Cir.2001)). Accordingly, in order for a person to prevail on an alleged violation pursuant to Section 605, the plaintiff must establish that the defendant "received, assisted in receiving or intercepted" the plaintiff's satellite transmission. *Id.; DIRECTV, Inc. v. Kitzmiller*, 2004 WL 692230, *2 (E.D.Pa.2004).

█ The Court also observes that the Communications Act of 1934, as amended, does not provide a statute of limitations for actions under 47 U.S.C. § 605. Under such a circumstance, where the federal statute does not provide any limitations period, the court generally borrows the limitations period from the most analogous state statute. In *Kingvision Pay–Per–View v. 898 Belmont, Inc.*, 366 F.3d 217 (3d Cir.2004), the Third Circuit determined that the two-year statute of limitations period applicable to Pennsylvania's piracy statutes governed claims under 47 U.S.C. § 605. Accordingly, this Court borrows the Pennsylvania piracy statute paralleling the Plaintiff's claims pursuant to 47 U.S.C. § 605 and applies a two-year statute of limitations to Plaintiff's counts one and three.

### 1. Accrual Date

■ The Plaintiff's claim at count one is based upon the Defendant's "unauthorized interception" of the Plaintiff's satellite programming. (Document No. 4). Additionally, the Plaintiff's claim at count three is based upon the Defendant's knowing "manufactu[re], assembl[y], or modifi[cation]" of the access device equipment in order "to facilitate the unauthorized decryption" of Plaintiff's satellite programming. *Id.* Again, the Court observes that the issue of when the Plaintiff discovered, or "by the exercise of due diligence could have discovered, the basis of its causes of action under 47 U.S.C. § 605(a) . . . presents questions of fact" which cannot be determined on the Defendant's Motion to Dismiss, or in the alternative, Motion for Summary Judgment. *In re Cases Filed by DIRECTV, Inc.*, 344 F.Supp.2d at 662. More specifically, the Court notes that upon further review of Plaintiff's Amended Complaint regarding counts one and three, the Plaintiff alleges more than mere possession of the Pirate Access Device purchased by the Defendant from EQ Stuff.[13] A reasonable inference can be drawn from the Plaintiff's Amended Complaint that the pirate access device purchased by the Defendant was used to intercept the satellite signals provided by the Plaintiff. Thus, accepting all allegations and reasonable inferences of the non-moving party as true, counts one and three of the Plaintiff's Amended Complaint regarding EQ Stuff purchases survive dismissal.

Accordingly, the Defendant's Motion for Summary Judgment for claims under 47 U.S.C. § 605 regarding EQ Stuff devices are denied.

### C. 18 Pa.C.S. § 910

Finally, the Court considers whether the Plaintiff's fourth cause of action under 18 Pa.C.S. § 910, regarding EQ Stuff purchases is barred by the statute of limitations. Specifically, count four of the Plaintiff's Amended Complaint (Document No. 4) alleges the following:

43. Upon information and belief, Defendant[ ] knowingly possessed, used or assembled an unlawful telecommunication device that could be used for commission of a theft of DIRECTV's telecommunication service or to decrypt, acquire o[r] facilitate the decryption or acquisition of DIRECTV telecommunication service without the consent of DIRECTV.

44. Such conduct . . . violates 18 Pa. C.S. § 910(A)(1)(i) [sic] and such activity DIRECTV entitles [sic] to statutory damages in a sum not more than $10,000, as the Court considers just for each violation. 18 Pa.C.S. § 910(D.1)(2) [sic]. In addition to statutory damages, DIRECTV is further entitled to recovery of reasonable attorney fees and costs, including investigation, testing and expert witness fees. 18 Pa.C.S. § 910(D)(2)(iv) [sic].

(Document No. 4).

The Court observes that pursuant to 18 Pa.C.S. § 910, the conduct of the Defendant alleged by the Plaintiff violates the following subsections of the Pennsylvania statute:

Any person commits an offense if he:

(1) makes, distributes, possesses, uses or assembles an unlawful telecommunication device or modifies, alters programs or reprograms a telecommunica-

---

**13.** The Court recognizes that in order to set forth a cognizable claim pursuant to 47 U.S.C. § 605(a), an allegation of mere posses-sion of a pirate access device is insufficient to establish a violation of Section 605. *Kitzmiller,* 2004 WL 692230, at *2.

tion device designed, adapted or which can be used:

(i) for commission of a theft of telecommunication service or to disrupt, transmit, decrypt, acquire or facilitate the disruption, transmission, decryption or acquisition of any telecommunication service without the consent of the telecommunication service provider; 18 Pa. C.S. § 910(a)(1)(i).

\* \* \* \* \* \*

**Types of damages recoverable.**—Damages awarded by a court under this section shall be computed as either of the following:

(2) Upon election by the complaining party at any time before final judgment is entered, that party may recover in lieu of actual damages an award of statutory damages of between $250 to $10,000 *for each unlawful telecommunication device involved in the action,* with the amount of statutory damages to be determined by the court, not the jury, as the court considers just.

18 Pa.C.S. § 910(d.1)(2). (emphasis added).

\* \* \* \* \* \*

**Civil action.**—

(2) A court may:

(iv) in its discretion, award reasonable attorney fees and costs, including, but not limited to, costs for investigation, testing and expert witness fees, to an aggrieved party who prevails;

18 Pa.C.S. § 910(d)(2)(iv).

18 Pa.C.S. § 910, *et seq.* As noted earlier, a civil action under the Pennsylvania Anti–Piracy Statute (18 Pa.C.S. § 910, *et seq.*) is subject to a two-year statute of limitations. *See* fn. 4, *supra*; *Kingvision Pay–Per-View*, 366 F.3d at 225; *see also* 42 Pa.C.S. § 5524(7). Accordingly, the Court must determine the date of accrual for the Plaintiff's cause of action pursuant to

Pennsylvania Anti–Piracy Statute and Defendant's alleged EQ Stuff purchases.

**1. Accrual Date**

 Similar to an analysis of the statute of limitations under federal law, whereby the statute of limitations "begins to run at the time when a complete cause or right of action accrues or arises", *In re Cases Filed by DIRECTV, Inc.*, 344 F.Supp.2d 647, 654 (D.Ariz.2004) (*quoting* 54 C.J.S. *Limitations of Actions* § 81 (1987)), *see A.1, supra,* in Pennsylvania, "a cause of action accrues on the date the injury was sustained, or when 'a party has a legal right to institute suit and can maintain a successful action.'" *DiCicco v. Willow Grove Bank,* 308 F.Supp.2d 528, 534 (E.D.Pa.2004)(*quoting ITG, Inc. v. Price Waterhouse,* 697 F.Supp. 867, 870–71 (E.D.Pa.1988))(*citing Kapil v. Assoc. of Pa. State College and Univ. Faculties,* 504 Pa. 92, 470 A.2d 482 (1983)). Consequently, "[l]ack of knowledge, mistake or misunderstanding do not toll the running of statute of limitations .... It is the duty of the party asserting the cause of action to use all reasonable diligence to properly inform himself of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period." *DiCicco,* 308 F.Supp.2d at 534 (*quoting Lang v. Cont'l Assur. Co.,* 54 Fed.Appx. 72, 74 (3d Cir.2002)(*citing Cappelli v. York Operating Co., Inc.,* 711 A.2d 481, 484–85 (Pa.Super.1998)) (internal quotations and citations omitted)).

**2. Discovery Rule**

 If the prescribed period to institute a suit has run, then a party is barred from bringing its cause of action unless the statute of limitations has been tolled. *Tyler v. O'Neill,* 1998 WL 961383, \*3 (E.D.Pa.1998); *Bohus v. Beloff,* 950 F.2d 919, 924 (3d Cir.1991). Under the

discovery rule, the statute of limitations can be tolled "when a plaintiff, despite the exercise of due diligence, is unable to know of the existence of the injury and its cause." *Tyler,* 1998 WL 961383, at *3 (citing *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 84, 468 A.2d 468, 471 (1983)). However, "[t]olling ceases when the plaintiff has 'sufficient critical facts' to place him on notice that a wrong has been committed against him and that prudence, dictates further investigation into the matter." *Andritz Sprout–Bauer, Inc. v. Beazer East, Inc.,* 12 F.Supp.2d 391, 415 (M.D.Pa.1998) (quoting *Pearce v. Salvation Army,* 449 Pa.Super. 654, 674 A.2d 1123, 1125 (1996)). The plaintiff bears the burden of proving that the statute of limitations has been tolled by showing that the plaintiff exercised "reasonable diligence." *Andritz Sprout–Bauer, Inc.,* 12 F.Supp.2d at 415; *Tyler,* 1998 WL 961383, at *4.

The Pennsylvania Supreme Court defined "reasonable diligence" in *Baumgart v. Keene Building Products Corp.,* 542 Pa. 194, 666 A.2d 238 (1995) as:

> ... a reasonable effort to discover the cause of injury under the facts and circumstance[s] present in the case. Long ago we recognized that '[t]**here are few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful.** This is what is meant by reasonable diligence.'

*Id.* (quoting *Deemer v. Weaver,* 324 Pa. 85, 187 A. 215, 217 (1936)). (emphasis in original). Such diligence, or "qualities of attention, knowledge, intelligence and judgment to which society requires of its members for the protection of their own interest and the interests of others", *Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 505 A.2d 973, 988 (1985) (quoted in *Andritz*

*Sprout–Bauer, Inc.,* 12 F.Supp.2d at 415), is generally an objective standard, whereby "each plaintiff is required to employ the level of diligence a reasonable person would employ under the same set of facts and circumstances." *Andritz Sprout–Bauer, Inc.,* 12 F.Supp.2d at 415 (citing *Cochran v. GAF Corp.,* 542 Pa. 210, 666 A.2d 245, 249 (1995)).

■ Whether a plaintiff has exercised due diligence under the facts of the case is generally a question of fact for a jury. *Tyler,* 1998 WL 961383, at *4. For example, in *Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 325, 608 A.2d 1040, 1043 (1992), the Pennsylvania Supreme Court explained the role of the jury as follows:

> Whether the statute has run on a claim is usually a question of law for the trial judge, but where the issue involves a factual determination, the determination is for the jury. Specifically, the point at which the complaining party should reasonably be aware that he has suffered an injury is generally an issue of fact to be determined by the jury; only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law.

Quoted in *Tyler,* 1998 WL 961383, at *4. In other words, if there is no evidence which could reasonably support a finding that the plaintiff acted with reasonable diligence, then judgment in favor of the defendant is appropriate. *Cochran,* 666 A.2d at 248.

■ As discussed earlier, the Plaintiff commenced this civil action against the Defendant on April 1, 2004. The Plaintiff conducted its raid on EQ Stuff on or about January 28, 2002, at which time it obtained records which confirmed the existence of a distribution source for the country-wide transmission of pirate access devices to which it now complains. The Plaintiff did

not learn of the Defendant's identity and involvement in the alleged pirating of its satellite programming until "after spending significant time analyzing and interpreting those records" obtained in raid. (Document No. 4, ¶ 27). Nonetheless, the Court determines that the Plaintiff learned of its injuries complained of pursuant to 18 Pa.C.S. § 910, and that the Plaintiff had a reasonable opportunity to discover the alleged possession of the Pirate Access Device on or about January 28, 2002.

Accordingly, the Court determines that the seizure of the business and financial records which led the Plaintiff to the discovery of the Defendant's purchases, and subsequent possession of the pirating devices, occurred on January 28, 2002. The Court also observes that the gravamen of the Plaintiff's Amended Complaint under 18 Pa.C.S. § 910 is that the Defendant "knowingly *possessed,* used or assembled" the access devices purchased from EQ Stuff. Thus, the same principles that were applicable under 18 U.S.C. § 2511 and 47 U.S.C. § 605 to toll the statute of limitations do not apply to Plaintiff's claims pursuant to 18 Pa.C.S. § 910. However, the Plaintiff has proposed alternative theories

for the inclusion of its EQ Stuff claims against the Defendant.

The Plaintiff asserts that the EQ Stuff [p]urchase "is probative of Plaintiff's claims, as it is demonstrative of evidence of character pursuant to Federal Rule of Evidence 404. Alternatively, the Plaintiff argues that Defendant's EQ Stuff [p]urchase constitutes evidence of a 'continuing violation' which equitably replaces that purchase within the applicable statute of limitations period." (Document No. 10, p. 7). Accordingly, the Court addresses Plaintiff's claim that the Defendant's EQ Stuff purchases are within the applicable two-year statute of limitations period pursuant to the continuing violation doctrine.

### 3. Continuing Violation Doctrine [14]

Initially, the Court notes that the discovery rule and the continuing violation doctrine may be applied simultaneously, and they are not inconsistent with one another. *See Hodge v. Bluebeard's Castle, Inc.,* 2002 WL 1022524, *5, n. 12 (Terr.V.I.2002); *see generally Kichline v. Consol. Rail Corp.,* 800 F.2d 356 (3d Cir. 1986). Specifically, the Court observes that each rule is applied to a cause of action under a separate analysis. For ex-

---

**14.** The continuing violation doctrine has been most often applied in employment discrimination claims. *See e.g., Jackson v. Chubb Corp.,* 45 Fed.Appx. 163 (3d Cir.2002); *cert. denied,* 537 U.S. 1104, 123 S.Ct. 868, 154 L.Ed.2d 773 (2003)(noting that the continuing violation doctrine applies in employment actions); *West v. Philadelphia Electric Co.,* 45 F.3d 744, 754 (3d Cir.1995) (recognizing unlawful employment cases involving ongoing continuous violations occur); *Bronze Shields, Inc. v. New Jersey Dept. of Civil Serv.,* 667 F.2d 1074, 1081 (3d Cir.1981) (noting that court decisions in unlawful employment cases "have shown an inclination to interpret this time limitation so as to give the aggrieved person the maximum benefit of the law"); *see also Jewett v. Int'l Tel. and Tel. Corp.,* 653 F.2d 89, 91 (3d Cir. 1981); *Hall v. St. Joseph's Hosp.,* 343 N.J.Su-

per. 88, 777 A.2d 1002 (App.Div.2001) *cert. denied,* 171 N.J. 336, 793 A.2d 715 (2002). However, the Court also observes that the application of the continuing violation doctrine has not been precluded in other contexts. *See e.g., Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.,* 927 F.2d 1283 (3d Cir.1991)(applying the continuing violation doctrine to a claim brought under the National Relations Act); *Centifanti v. Nix,* 865 F.2d 1422, 1432–33 (3d Cir.1989)(apply the continuing violation doctrine to a procedural due process claim brought pursuant to Section 1983). Accordingly, the Court addresses the Plaintiff's continuing violation claims under the appropriate standards set forth by the Third Circuit in *West v. Philadelphia Electric Co., infra.*

ample, the discovery rule "provides that a cause of action begins to accrue when a plaintiff knows or should know of a wrongful act." *Hodge*, 2002 WL 1022524, at *5 (*citing In re Tutu Wells*, 846 F.Supp. 1243, 1249 (D.Vi.1993)). Moreover, in appropriate circumstances, the discovery rule essentially stops or delays the clock from ticking on a claim.

■ Alternatively, the continuing violation doctrine "is an 'equitable exception to the timely filing requirement.'" *Cowell v. Palmer Township*, 263 F.3d 286, 292 (3d Cir.2001)(*quoting West v. Philadelphia Elec. Co.*, 45 F.3d at 754). Specifically, the continuing violation doctrine provides:

> A continuing [violation] is, in essence, a succession of reoccurring [violations] that result in damages that are recoverable each time they occur. In theory, each instance of damage should give rise to a new claim and, thus, a new date of accrual.

*In re Tutu*, 909 F.Supp. 980, 988 (D.Vi.1995)(quoted in *Hodge*, 2002 WL 1022524, at *6). Furthermore, the continuing violation doctrine does not "stop the ticking of the limitations clock." *Kichline*, 800 F.2d at 360 (quoted in *Hodge*, 2002 WL 1022524, at *6). However, where there is a continuing violation, "whether each tortious interference is independently actionable and whether a new 'wrong' has been committed must be determined." *Hodge*, 2002 WL 1022524, at *6. Thus, in order to proceed under the continuing violation doctrine, a plaintiff must establish both: (1) "that 'the last act evidencing the continuing practice falls within the limitations period'; and (2) that 'the defendant's conduct is more than the occurrence of isolated or sporadic acts.'" *Cowell*, 263 F.3d at 293 (quoted in *Schneck v. Saucon Valley School District*, 340 F.Supp.2d 558, 580 (E.D.Pa.2004)). Consequently, a continuing violation "requires 'continual un-

lawful acts, not continual ill effects from an original violation.'" *Hodge*, 2002 WL 1022524, at *6 (*quoting Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir.1982)).

The Court also observes that the application of the continuing violation doctrine "is most appropriate where the wronged party can demonstrate a causal connection between the continuing tortious conduct and the wronged party's renewed injuries." *In re Casini*, 307 B.R. 800, 814 (Bkrtcy.D.N.J.2004). Consequently, in determining whether the defendant's conduct is an isolated act or continuous tortious conduct, the Third Circuit has acknowledged that the following three factors should be considered by courts:

> (1) subject matter—whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency—whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence—whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

*West*, 45 F.3d at 755 n. 9 (*citing Berry v. Board of Supervisors of Louisiana State Univ.*, 715 F.2d 971, 981 (5th Cir.1983))(quoted in *Cowell*, 263 F.3d at 292). Accordingly, the Court must determine whether the continuing violation doctrine applies to the Plaintiff's claim against the Defendant pursuant to 18 Pa.C.S. § 910.

■ In the case *sub judice*, the Plaintiff must first establish that the Defendant has committed a violation of Section 910 within the statutory period. As discussed above, however, the Defendant's alleged violation of Section 910, revealed as a result of the documents retrieved in the raid

of EQ Stuff on or about January 28, 2002, occurred outside of the two-year statutory period. Furthermore, even assuming that the Defendant's alleged violation of Section 910 occurred within the statutory period, the application of the continuing violation doctrine is inappropriate in the case *sub judice*. For example, the relief provided pursuant to Section 910 expressly permits a party to "recover in lieu of actual damages an award of statutory damages of between $250 to $10,000 *for each unlawful telecommunication device involved in the action* ..." 18 Pa.C.S. § 910(d.1)(2). (emphasis added). In other words, pursuant to this language, a new wrong is determined in consideration of "each unlawful telecommunication device involved", not by each unlawful interception.

Accordingly, the Court determines that the alleged purchase by the Defendant of Pirate Access Devices from EQ Stuff occurred outside the statutory limitations period. Moreover, the Defendant's alleged purchase of EQ devices is properly characterized as an isolated incident rather than reoccurring acts. The Court also finds that the degree of permanence of the Defendant's alleged violation should have triggered the Plaintiff's awareness of and duty to assert its rights on the date that the Plaintiff was placed on notice that a wrong had been committed and further investigation was required in order to exercise due diligence, i.e., on or about January 28, 2002. Accordingly, the Court determines that the frequency and degree of permanence of the Defendant's alleged violation under § 910, as well as the relief expressly provided under this section, weigh heavily against the application of the continuing violation doctrine in the case *sub judice*. Therefore, the Defendant's Motion for Summary Judgment regarding

EQ Stuff purchases and the Plaintiff's asserted violations thereto pursuant to 18 Pa.C.S. § 910 is granted.[15]

An appropriate order follows.

### ORDER

**AND NOW**, this 16th day of February, 2005, upon consideration of the Defendant's Motion to Dismiss, or in the alternative for Summary Judgment at Document No. 5, the Plaintiff's Response to the Defendant's Motion at Document No. 10, the Federal Rules of Civil Procedure 12(b)(6) and 56(c), relevant case law, and the record in the case *sub judice*, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part as follows:

Count four is dismissed with regard to the claims based upon the EQ Stuff, Inc. purchases; and in all other respects, the Defendant's Motion for Summary Judgment is **DENIED**.

---

**15.** The Court will reserve ruling on the Plaintiff's arguments in its Response (Document No. 10) pursuant to Federal Rule of Evidence 404(b).